## Laubach *versus* Leibert.

1. Where one who is indebted to a bank and has a deposit therein draws checks upon the bank which, upon their face, indicate that they are drawn to pay his indebtedness to the bank, these checks operate as an appropriation of the fund on deposit from the time of presentment, and the bank cannot refuse to accept them in payment of the debt of the depositor.

2. The word "assignee" appended to the name of the depositor in his account does not earmark the fund, and gives it no identity as belonging to any particular person or fund.

April 3d 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ.

Error to the Court of Common Pleas of *Northampton county:* Of January Term 1878, No. 272.

Assumpsit by Joseph Laubach, assignee of the Dimes Saving Institution of Bethlehem, against William Leibert, in which the following case was stated for the opinion of the court :—

William Leibert, defendant, and Levin J. Krause, were assignees of John Krause for the benefit of creditors. In 1874 Leibert, as assignee, opened an account with the Dimes Saving Institution of Bethlehem, and had standing to his credit, as assignee on the books of said bank on May 2d 1877, $3988.76, and interest $487.77, total $4476.53, funds belonging to said estate.

The Dimes Saving Institution of Bethlehem was, on May 2d 1877, the holder of notes on which Leibert was liable individually as maker, and amounting all together to $1550.

It was also the holder of notes on which Leibert was liable as endorser, amounting to $3600, said liabilities individually and as endorser aggregating $5150.

On April 30th 1877, said Dimes Saving Institution of Bethlehem resolved to suspend. They were incorporated by Act of General Assembly of October 23d 1863, and after the passage of the resolution, neither the president, cashier, assistant cashier nor teller remained in the bank. The doors of said bank remained open until May 2d 1877, and Ashton C. Borhek, one of the trustees of the bank, but not one of its executive officers received payment of notes falling due, but neither received any money on deposit or made any payments. On May 1st 1877, a citation was issued by the court, at the instance of a creditor, directed to said bank, and requiring them to show cause why they should not be decreed to make a general assignment for the benefit of creditors, which citation was returnable May 7th 1877. On May 7th 1877, said defendants filed their answer, admitting their insolvency and willingness to make an assignment to G. B. Linderman, Esq.; and a decree was made as prayed for. On May 9th 1877, a general assignment was executed according to the decree, under Act of Assembly of 16th April 1850. On May 2d 1877, Levin J. Krause, a director or trustee

[Laubach *v.* Leibert.]

of said bank, acting on behalf of William Leibert, both said Krause
and said Leibert knowing the insolvent and suspended condition of
said bank, presented to Ashton C. Borhek, at the banking house of
said bank, the following checks :—

" No. —.                            Bethlehem, Pa., May 2d 1877.
          DIMES SAVING INSTITUTION OF BETHLEHEM.
Pay to the order of Levin J. Krause twenty-two hundred and
sixty dollars, for note due May 8th.
                              WILLIAM LEIBERT, Assignee.
Endorsed—LEVIN J. KRAUSE.
               Received this under protest."

" No. —.                            Bethlehem, Pa., May 2d 1877.
          DIMES SAVING INSTITUTION OF BETHLEHEM.
Pay to the order of William Leibert fifteen hundred and fifty
dollars, to take up three notes, one for $450, one for $600 and one
for $500.
$1550.                        WILLIAM LEIBERT, Assignee.
Endorsed—WILLIAM LEIBERT.
               Received this under protest."

" No. —.                            Bethlehem, Pa., May 2d 1877.
          DIMES SAVING INSTITUTION OF BETHLEHEM.
Pay to the order of Levin J. Krause one hundred and seventy-
eight dollars.
                              WILLIAM LEIBERT, Assignee.
$178.
Endorsed—LEVIN J. KRAUSE."

Amounting to the sum of three thousand nine hundred and
eighty-eight dollars ($3988), which checks were received by said
Ashton C. Borhek under protest, and so marked.

The question submitted for the opinion of the court is, whether
William Leibert is bound to pay the assignee in cash the whole of
the said notes on which he is individually and as endorser liable, or
whether the said checks, amounting to $3988, are payment to that
amount of the said notes.

If the court be of opinion that said Leibert is so liable, then judg-
ment to be entered for the plaintiff for the amount of said notes
and interest from the maturity of said notes; but if not, then judg-
ment to be entered in favor of plaintiff only for the balance remain-
ing due on said notes, after deducting said sum of $3988; the costs
to follow the judgment, which shall be final.

The court, Meyers, P. J., in an opinion, inter alia, said :—

" We are clearly of the opinion that there is no averment of fact or
facts in the case stated that constitutes either in law or fact the trans-
action of May 2d 1877, between Levin J. Krause, on behalf of the

[Laubach v. Leibert.]

defendant, and Ashton C. Borhek, on behalf of the bank, a payment on the notes in suit.

" The only remaining questions for consideration are, whether the checks themselves, having been presented to the bank and by it retained, or the indebtedness of said bank to the defendants by reason of the credit of the latter on the books of the bank of $3988.76, and interest $487.77, operate as a payment to that extent, in a suit by the bank against the defendant on said notes, or can be pleaded by way of set-off.

" We are decidedly of the opinion that said checks or indebtedness of themselves cannot operate as actual payment, for that is generally in the nature of a contract, and there are no sufficient averments in the case stated that said checks or indebtedness should operate as a payment or discharge of said notes to that extent. Neither are there any averments of facts that would raise a conclusion of law that either the checks or the indebtedness should operate as payment.

" Can said checks or indebtedness be deducted from said notes by way of set-off?

" Generally where one person is indebted to another, the latter can set off a debt due in the same right. In the application of this rule courts have allowed it in cases which apparently ought to have been excluded by the rule. The objection on the part of plaintiff to allow said checks or indebtedness to be treated as a set-off is based on the ground that they are not due by the bank in the same right; that two of said checks are signed by the defendant as assignee, and that the credit of the defendant on the books of the bank is in the name of the defendant as 'assignee,' and the fact admitted in the case stated that said credit was in fact for trust funds of the assigned estate of John Krause to the defendant, and another for the benefit of creditors. There is no doubt that the objection would be well taken if said credit had been in the name of the defendant as one of the assignees of John Krause for the benefit of creditors. It is contended on the part of the defendant that the addition of the word 'assignee' to the name of the defendant as depositor does not, without any further designation, give the deposit the character of a trust fund, and make the depositor a creditor of the bank in a fiduciary character. In other words, it is claimed that the word 'assignee' is mere surplusage, and that the credit in its legal effect between the depositor and the bank is the credit of the depositor in his individual right, and as such he has a legal right to the deposit, and to sue for and recover the same: Swartwout v. Bank, 5 Denio 555. Swartwout was collector of customs in the city of New York, and kept an account with defendants in the name of 'Samuel Swartwout, collector,' which was continued to Nov. 1st 1838, when there was a balance to his credit of $751.26. During the same period he kept another

[Laubach *v.* Leibert.]

account with the defendants in the name of 'Samuel Swartwout.'
This account was balanced September 11th 1838.    In May 1844,
the plaintiff's interest on the former account was assigned to one
F. J., and a check drawn for the same and signed 'Samuel Swart-
wout, late collector,' presented to the defendants, which they
refused to pay.    On suit brought by Swartwout, the Supreme
Court of New York held that where a public officer deposits money
in a bank upon an account kept in his own name, with his official
addition, in the absence of evidence to the contrary, it is presumed
and regarded as his own funds and subject to his drafts.    The
reason for this decision, as collected from the opinion of the court,
seems to be that the defendants, to protect themselves from payment
to the plaintiff, must show that by their account so kept they are
liable to pay the United States this balance.

"Is this the law of this state?

"It has been held in this state that where a person in fraud of
the true owner of money deposits it to his own credit, the owner of
the money, on proof of this fact, can recover the money from the
depository in his own name: Frazier *v.* Bank, 8 W. & S. 18.

"So also where an attachment was served on a bank, and the
defendant in the attachment, subsequently acting as agent for a
third person, deposited cash with the garnishee in his own name,
and also procured said garnishees to discount drafts drawn by said
defendant, though in fact as agent, which were paid by the princi-
pal.    Subsequent to the attachment, the defendant drew out the
funds by his checks and applied them to the business of his princi-
pal.    Yet it was held that the garnishees were liable to the attach-
ing creditor, although the jury found that all the funds were depo-
sited and drawn out by the defendant as agent for others.    It does
not clearly appear from the history of the case whether the bank
had knowledge at the time the money was deposited that it did not,
in fact, belong to the depositor, but the fact that it stood in his
name, and apparently subject to the operation of the attachment,
shows the bank had no right to pay out the money to the defendant,
on the information that it belonged to him as agent.    Especially
where the *cestui que trust* never gave notice to the attaching creditor
of any claim, or never appeared in court to move that the attachment
should be quashed, nor took any steps asserting ownership or indi-
cative of it: Jackson *v.* Bank of United States, 10 Barr 61.

"This case was somewhat doubted by Judge Hare, in Paxon *v.*
Sanderson, 3 Phila. 303, but was fully sustained in F. & M. Bank *v.*
King, 7 P. F. Smith 207, on the ground that at the time the
money was paid in the bank the latter had no knowledge that the
money belonged to another, and that before attachment they could
not have resisted the claim of the depositor in the absence of
notice; but that a subsequent payment of the money on the checks
of the defendant in the attachment would not entitle the garnishee

[Laubach v. Leibert.]

to defend against the scire facias by attempting to show that the money deposited, in fact, was the money of some undisclosed principal of the depositor. But neither the case of Jackson v. Bank, nor Bank v. King, decide that if the garnishee had not paid out the fund to the depositor, the former could not have defended on the ground that the money did not belong to the depositor. But in Bank v. Jones, 6 Wright 534; 8 Id. 524, and Bank v. Ryan, 14 P. F. Smith 246, it was held that where money was deposited in the name of a person simply as agent, it was competent for the bank, as garnishee in an attachment against the depositor, to show by evidence *aliunde* that the money belonged to a third person. It was, however, said by Judge READ, in the latter case, that where the depositor can at any time draw money out on his own check, and no person could interpose to prevent it, it is liable to attachment.

"The same principle is ruled in Bank v. King, 7 P. F. Smith 202. This was also an attachment case. The defendant in the attachment was John H. Curtis, Jr., and agent for the plaintiff in the collection of rents. He was also agent for the Philadelphia Saving Fund Society, for the trustees of the Fotteral estate, and others. He deposited his funds in the Tradesmen's Bank, and that of his clients with the garnishees in the name of J. H. Curtis & Son. J. H. Curtis, Sr., was dead, and his son retained the firm name. After the service of the attachment, notice was served on the garnishees that the fund attached belonged to the *cestui que trusts* above named. On issue joined between plaintiff and garnishees, the court held that it was competent for the garnishees to prove these facts; that the attaching creditor stood in the position of the depositor, and could only recover what the depositor could. In Stair v. Bank, 5 P. F. Smith 364, Wolf, the sheriff of York county, and also executor of Shearer, deposited money in bank which was credited to Wolf in his account as sheriff, but noted in his bank book by a bank officer as belonging to Shearer's estate. Wolf died, and *letters de bonis non c. t. a.* were granted to another person, who drew a check on said bank for the money deposited by Wolf and noted in his bank book as belonging to Shearer's estate. The bank refused to pay it. Suit was brought by the administrator against the bank, and on proof of said facts the court held that the action was properly brought and the plaintiff entitled to recover.

"A careful examination of the principle on which these cases were decided renders it somewhat difficult to apply them to the facts of the case. We can well understand where a principal is entitled to a fund deposited in bank in the name of his agent, why the former should be entitled to recover it, whether on the ground of fraud or the mere fact that he is the lawful owner thereof. So also where money attached in the hands of a person received in the name of the defendant in the attachment, but in

[Laubach *v.* Leibert.]

fact the money of a third person, that this fact could be set up as a defence by the garnishee when notice had been given by the true owner, or where the latter appeared in court and sought its assistance to protect him against the attaching creditor.

"There is no doubt, as we have already stated, that if the money had been deposited in the name of one or both assignees, as assignees of John Krause, for the benefit of creditors, such indebtedness would not be the subject of set-off. For a deposit of money in bank is nothing less than a loan or contract between the parties, and if put in that form, the right of recovery can only be had in that way and in no other. But a deposit by a person designating himself simply "assignee," though it may have been known at the time by the depository that it was a particular trust fund (which however is not alleged in the case stated), does not necessarily make the contract of loaning between the depository and the depositor other than an individual or personal one in his own right. Would he be obliged to bring suit in his name as one of the assignees of John Krause for the benefit of creditors against the depository to recover the money? We think not. If in that form then his co-assignee, Levin J. Krause, would necessarily have to join also, for if the word 'assignee' in the credit, coupled with the admission that the money deposited was in fact money belonging to said trust, did not constitute a contract of loaning with the defendant in his individual right, then it must follow that it is a contract by implication with both assignees in their fiduciary character. But such a conclusion we are not willing to admit. If that were so and the money was lost, Levin J. Krause might possibly be held liable for a *devastavit*, though he may have had no knowledge of the transaction whatever. But it may be said that assignees for the benefit of creditors occupy the relation of agents to his *cestui que trust* as principals. That is not so. The only relation between them is as trustee and *cestui que trusts*, bearing no resemblance to that of principals and agents. In them as trustees is the legal title and ownership of the trust estates, and in that sense it cannot be said that they are agents of the *cestui que trusts* as principals. For as between principal and agent the legal title of money belonging to the principal is always in him, though deposited by the agent in his own name fraudulently or otherwise. While that is so he is not bound to invoke his right, but if he does, the depository is obliged to render it to the principal and not to the agent. It is this principle which governs the relation of principal and agent that controlled nearly all the cases above cited, but it has no application to the case under consideration, either as between the parties thereto or the defendant and his *cestui que trusts*. The *cestui que trusts* certainly could not give notice to the bank not to pay the money to the assignee, in whatever form he may have deposited it; neither could they bring suit for the recovery of the money. They have, it is true, a remedy to

[Laubach v. Leibert.]

remove an unfaithful trustee, and possibly as auxiliary to the former remedy by proper process, restrain him from recovering the trust funds in his hands.   In the proceeding now before the court, the plaintiff has no right to assent, either in his own interest or to protect the *cestui que trusts* of the defendant, that the fund loaned by the defendant to the plaintiff in fact belonged to the trust estate of John Krause, to defeat the defendant's right of set-off, unless the former shows conclusively that the contract of loan by the defendant was in his fiduciary character as one of the assignees of John Krause for the benefit of creditors.   There are other safe-guards thrown around *cestui que trusts*, and courts are not bound to supervise the transactions of trustees with respect to trust funds in every form they may incidentally come before them.

"In those cases already cited, where the relation of principal and agent did not enter into the decision thereof, they are such where the transaction shows that the money deposited was the property of another party, who was in position to enforce it on the death of the original depositor.   Such was the case of Stair *v.* Bank, *supra.* But the principle governing that case cannot be invoked by the plaintiff in his own behalf against the defendant or in behalf of the defendant's *cestui que trusts.*

"Moreover, it does not appear that the trust estate is in any way jeopardized by this plea of set-off, for neither the sureties of the trustees nor their *cestui que trusts* are in court asking for relief against said act of the defendant in the manner before stated, and until that is done, or it is made to appear that the contract between the plaintiff and defendant with respect to said money deposited was not on the part of the defendant in his individual right, but with him as one of the assignees of John Krause for the benefit of creditors, we are compelled to hold that the defendant is entitled to set-off against the plaintiff's claim the full amount of defendant's credit standing on plaintiff's books, as 'William Leibert, assignee,' as stated in case stated.

"And now, judgment is entered in favor of the plaintiff, amount to be ascertained by the prothonotary."

The plaintiff, who took this writ, assigned this entry of judgment for error, on the ground that the question of "set-off" was not submitted in the case stated.

*W. E. Doster*, for plaintiff in error.—The question whether the checks or indebtedness could be deducted by way of set-off was not submitted in the case stated, and it was palpable error for the court to consider it.   The only question presented for the opinion of the court, whether the checks were payment or not, was decided in the plaintiff's favor.

*W. S. Kirkpatrick*, for defendant in error.—Of course nothing in

[Laubach *v.* Leibert.]

the way of matter of fact can be added to a special verdict or case stated by inference or averment, and if the case be defectively stated and not co-extensive with the evident scope of the contro-versy, it must be amended, or a *venire fiacias de novo* awarded, in order to prevent a failure of justice. But if it contains all the necessary facts and embraces the whole controversy, the court annexes the proper legal consequences. According to the argument of the learned counsel, the defect so far as the judgment below is concerned, is admittedly not that the facts are not sufficiently stated, or of a kind of which the judgment could not be properly predicated, but that the question was not in so many words asked of the court. The question certainly was asked in the very act of submission. The court was substantially called upon to declare the legal aspect of the case stated.

Even if the contract was made with Leibert, expressly designating himself as assignee in trust for the benefit of creditors, he could sue for and recover the money in his own name, or could off-set the same to any suits against him upon contracts. It is not the case of a deposit made by his assignor, to whose right he succeeded as official trustee for certain beneficiaries, but a contract of deposit made with himself in the first instance; and it makes no difference in such a case whether he styles him assignee for creditors, or pre-sents himself unclothed with his fiduciary title, it being analogous to the case of a contract made with an executor or administrator of a decedent, after the death of the testator or decedent : Grier *v.* Huston, 8 S. & R. 404 ; Kline *v.* Guthart, 2 P. & W. 490 ; Wil-marth *v.* Mountford, 8 S. & R. 124.

Chief Justice AGNEW delivered the opinion of the court, May 6th 1878.

William Leibert was an individual depositor, and the liability of the bank was to him in his own right. No other could check for the money, or prevent its payment to him. The word " assignee " appended to his name in the account, did not earmark the fund, and gave it no identity as belonging to any particular person or fund. Assignee of whom, or for whom, or of what fund was it ? Nothing in the addition answers these questions. Leibert's checks were there-fore good for the purposes indicated on their face. The fact that they were received under protest made no difference. What right had the bank to protest ? Its duty was payment to its depositor, and the checks were sufficient vouchers. The protest could avail no one else, for it was not a trustee for another. All it could do was to pay the money to Leibert. The checks were therefore his appropriation of his deposit to the purpose expressed, of which the bank had notice when they were received. The delay in payment resulting from the refusal and protest did not change the effect of the appropriation. The money being in the hands of the bank

[Laubach v. Leibert.]

itself, and subject to his draft, and the checks being an immediate appropriation of this money, operated to extinguish the notes held by the bank against Leibert. It was not a mere assignment of a fund in the hands of a third party, but a direct application of the money which the bank itself held, and was bound to pay over to him to the notes in question, and therefore the bank was bound so to apply it. On what principle can the bank with the money in its own hands, and a direction to apply it to payment, maintain suit on the notes, and recover the cash, leaving the money in its hands already appropriated, to go to payment of its other debts? Clearly this would be grossly inequitable. The question propounded in the case stated is, whether Leibert was liable to pay the notes in cash at the suit of the bank? The court answered this substantially correctly. The criticism on the so-called set-off is therefore unavailing.

Judgment affirmed.