Franklin Trust Company of Philadelphia.

368

Argued May 15, 1935. Before SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Theodore Voorhees,* with him *Francis Biddle,* of *Barnes, Biddle & Myers,* for appellant.

*Richardson Dilworth,* with him *Bernard J. Kelley, Gerald F. Flood,* Special Deputy Attorneys General, and *Charles J. Margiotti,* Attorney General, for appellee.

Opinion by Mr. Justice Kephart, June 29, 1935:

Arnold-Blair-Rottner, Inc., is a corporation engaged in the real estate business. It has a large number of clients, including insurance companies for whom it acts as agent, managing properties, collecting rents and remitting to the owners. In 1931, when the Franklin Trust Company failed, it had three separate accounts with that bank, entitled, respectively, "Arnold-Blair-Rottner, Inc., General Account"; "Arnold-Blair-Rottner, Inc., Insurance Account"; and "Arnold-Blair-Rottner, Inc., Agency Account." The money in the "Insurance Account" represented collections on behalf of insurance company clients; that in the "Agency" represented collections on behalf of other clients whose properties it managed and from which it collected rent. Separate check books were maintained for the three accounts, and checks drawn on any one of the three accounts bore the name of that particular account.

It was stipulated that "the deposits in the Agency and Insurance Accounts consisted entirely of collections made by Arnold-Blair-Rottner, Inc., on behalf of its clients. . . . No part of the deposits in the Agency and Insurance Accounts represented funds of Arnold-Blair-Rottner, Inc." There was also set forth in the stipulation the names of the various clients for whom this company acted as agents, the properties, and the amount of rent collected and on deposit.

The secretary of banking, in settling his account, refused to pay a dividend on the Insurance and Agency accounts, claiming that he had the right to set off against these accounts the larger sum of $27,290.30 which the company individually owed to the bank. This was resisted, and, in the adjudication in the court below, the court held that, as the Franklin Trust Company had no knowledge or notice of any facts whatsoever indicating the nature of appellant's business or the nature of the funds contained in these checking accounts beyond their mere designations, the secretary was entitled to set off

these accounts against the notes which it held of the Arnold-Blair-Rottner Company.

The status of the parties was fixed as of the date of the bank failure and the appointment of the receiver, and whatever right of set-off existed accrued as of that date: Shipler v. New Castle Paper Products Corp., 293 Pa. 412, 419. The contest here is over the right of the bank to set off deposits in agency and insurance accounts of a depositor, the deposits admittedly being the property of third persons, against a debt due the bank by the depositor individually.

As a general rule, a bank may set off the deposit account of a particular creditor against the debt due it by that creditor, but may a bank set off a sum represented by a depositor's account in his name as "Agent" or an "Insurance Account" when the money represented therein is the property of other persons? In other words, may a bank take money affirmatively proved to be that of other persons to pay a debt due it by a depositor? If so, it can do more than an attaching creditor of the depositor could do: Bank of Northern Liberties v. Jones & Cole, 42 Pa. 536; Ibid., 44 Pa. 253. Under the admitted facts of this case, of course this cannot be done.

The case turns on the question of mutuality in quality of right with respect to a set-off. The bank's claim was against the company (depositor) in the latter's own right for its individual debt; what the bank claimed the right to set off was a demand (deposit) in the name of its creditor as agent in which that creditor had no property right, the property right being in third persons. In Gordon v. Union Trust Co., 308 Pa. 493, 496, we said: "The question here then is one of ownership, not one of determining the status of a deposit between the bank and the depositor. The underlying equitable principle set forth in Trestrail v. Johnson, supra, controls. The names in which suit could be brought and defended furnish an indication, but are not the only criterion, of the right of set-off. To whom do the funds really belong?

Mutuality of right in a set-off is not circumscribed by the 'right to bring an action,' but the broader question may be and generally is of importance. Whose money or claim is proposed to be used as a set-off? This is the true equitable principle which governs such questions." See Hunter v. Henning, 259 Pa. 347. There can be no question that the funds on deposit in these two accounts were not the property of this company and could not legally be used to pay its individual debt any more than in Hunter v. Henning, supra, could the funds there in question be used to pay the individual debt of the depositor; it was there endeavored strenuously to show that the debtor was responsible to his principal for the funds on deposit, to whom alone he should account; nevertheless this court held that such set-off or counterclaim could not be sustained.

The court below, in justifying its conclusion that the bank had a right to use the funds on deposit in these accounts as a set-off, depended largely on the fact that the bank did not know of the nature and character of these accounts, and that it therefore had the right to use them in payment of the note which it held against this company. There is, however, no contention that the bank was actually misled, or that the owners of the fund were guilty of misleading conduct with respect to the form of the deposit. While the right of set-off was fixed as of the date of receivership, there had been no appropriation of the moneys represented by these accounts. Nor would such act destroy the property right in third parties to the fund, or the right to assert it.

The company, acting in behalf of its clients and as their representative, now asserts their property right to these funds. This it was bound to do. It sustains that assertion by undenied proof submitted that the funds belong to third parties and not to itself. These facts distinguish this case from those relied on by the court below. Thus in Laubach v. Leibert, 87 Pa. 55, the depositor himself appropriated the moneys in an "As-

signee" account to the payment of his own debt before the bank closed. We held that the bank was estopped from denying his appropriation of these funds, though we are very much in doubt since the cases of Norristown-Penn Trust Co. v. Middleton, 300 Pa. 522, and Fehr v. Campbell, 288 Pa. 549, whether that would be held now as the law. The cases, however, were decided on the ground of estoppel of the bank to deny its depositor's right to withdraw the fund; the rights of the owner of the money were not considered. In Citizens N. Bank v. Alexander, 120 Pa. 476, the bank appropriated the balance in an account of a "Deputy Treasurer" to an overdraft of the treasurer of the county; we there held that the bank could not set up the defense, when sued by the deputy for the sum on deposit, that the ownership of the fund rested in a third person, the treasurer, and not the deputy treasurer in whose name it had been deposited. But the decision in that case plainly states the reason for it, that it was "clearly against public policy to permit a bank that has received money from a depositor, credited him therewith upon its books, and thereby entered into an implied contract to honor his checks, to allege that the money deposited belongs to some one else." To permit the bank to assume control would give it the status as a creditor that it otherwise would not possess. See First Nat. Bank of Lock Haven v. Mason, 95 Pa. 113.

Again in Patterson v. Marine N. Bank, 130 Pa. 419, where the bank paid money deposited in A's name as agent to third parties who claimed to be the true owners, the question as to who really owned the fund was submitted to the jury. There the question turned on the burden of proof placed on the bank of establishing title to the fund in the persons it had paid. So in the case of Franklin Savings & Trust Co. v. Clark, 283 Pa. 212, where an endorser was released by the bank's failure to apply credits in its possession to a note of one John W. Garland, then matured, the credit was a deposit in the

account of "John W. Garland, Special." In discussing this question we said that the designation "Special" was insufficient of itself to put the bank on inquiry, but pointed out that "The bank could show, however, that the deposit was for a purpose as described in the . . . opinions [there cited] where the word 'Special' had a definite meaning; either within the law as to a specific deposit, or an appropriation of money for a particular purpose." The bank tried to show the character of the deposit, but its evidence was utterly insufficient. The funds there in question were the funds of John W. Garland, and, being his funds, of course the bank should have used it as a credit on the note then in its possession and matured.

It can be readily seen that the instant case is not controlled by any of these decisions. We said in Trestrail v. Johnson, 298 Pa. 388, 396, where the ownership of a fund was in contest, "the designation 'Sheriff' would presumptively entitle it to be known as a trust account. Such presumption may be rebutted [citing authority]; but, of course, if it appears that the funds were not held in an official capacity, the fund would not be a trust by an individual, but the property of the administrator, the depositor being dead." Further on, we said: "We are satisfied that the evidence in this case amply warranted the conclusion that the fund in question was the property of the litigants who had issued the execution, and was deposited by the sheriff by virtue of his office, and must be adjudicated as such." It is fairly well established in other proceedings not specially related to set-off that agency accounts are, prima facie, not the account of the agent but of the principal though the principal is not disclosed. See Bank of Northern Liberties v. Jones & Cole, supra; Farmers & Mechanics Bank v. King, 57 Pa. 202, 205; the courts of other jurisdictions have dealt with similar agency accounts in like manner: Bank of Guntersville v. Crayter, 199 Ala. 599; Baker v. New York Nat. Exchange Bank, 100 N. Y.

31; Nat. Bank v. Ins. Co., 104 U. S. 54; Conqueror Trust Co. v. Fidelity & Deposit Co. of Maryland, 63 Fed. (2d) 833.

We stated in Trestrail v. Johnson, supra: "Generally speaking, in all cases where the ownership of the fund itself has been in dispute, and not the right to administer it, the court has been particular to do nothing which would disturb in the slightest the fund reaching its destined lawful end, without unnecessary risks that might come if a more liberal policy was adopted, it being conceded the fund was a trust or one that can be called such. In Hunter v. Henning, supra, we held that, as between the personal representative and third parties, while the representative might be regarded as the owner of the fund for its protection, yet where, by his act, there was a possibility of the funds being in jeopardy to the detriment of the trust estates, we kept them inviolable as far as that proceeding was concerned."

Under the circumstances, the court below was in error in permitting the secretary to credit or set off the agency deposit and the insurance account deposit on the note that was due by appellant; a dividend should have been permitted on account of these two deposits.

The decree of the court below is reversed and the record is remitted with a procedendo; costs to be paid from the funds of the bank in the receiver's possession.