Witherow, Appellant, *v.* Weaver et ux.

Argued November 20, 1939.

Before KELLER, P. J., CUN-
NINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and
HIRT, JJ.

*William K. Rhodes,* for appellant.

*Albert J. Williams,* for appellees.

OPINION BY CUNNINGHAM, J., December 19, 1939:
Broadly stated, the question raised by this appeal is
whether a tax collector may, upon the insolvency of a

bank, set off against his individual indebtedness to the bank a deposit, consisting of tax collections and standing in his name as "Collector," at the time of the insolvency.

The First National Bank of Darby originally confessed judgment against the appellees, H. Walter Weaver and his wife, Charlotte, on April 18, 1928, for $6,000. Availing themselves of the privilege accorded by our Rule No. 56, the parties in interest have signed a statement of the case showing how the question arose and was decided in the court below, and setting forth only so much of the pleadings as they deemed essential.

From this statement we gather these material facts: On March 25, 1933, the Comptroller of the Currency of the United States appointed Albert J. Crawford conservator of the bank; he served in that capacity until January 23, 1934, when W. Macklin Witherow, the appellant, was appointed its receiver. We are not concerned with an intervening revival in 1933. The present controversy arises out of the issuing by appellant on April 11, 1938, of a scire facias to revive the judgment which by that time had been reduced to $912.90.

An original and amended affidavit of defense were filed in which it was pleaded that H. Walter Weaver was entitled to a set-off, in the amount of $913.56, against the $912.90 due on the judgment. A rule for judgment for want of a sufficient affidavit of defense was taken by the appellant receiver, thereby raising the question of the sufficiency of the averments of the amended affidavit with respect to the claim of set-off. After full argument the court below discharged the rule and dismissed appellant's motion for judgment in his favor; hence this appeal by the receiver, under the Act of April 18, 1874, P. L. 64, 12 PS §1097.

The amended affidavit of defense is open to the criticism that it contains a number of conclusions of law, but the facts upon which the defense is based are thus specifically pleaded: "At the time of the appointment

of the said Albert J. Crawford as Conservator of [the] bank and the time of the appointment of the plaintiff as receiver thereof, defendant, H. Walter Weaver, had a deposit of $913.56 in bank in a checking account entitled 'H. Walter Weaver, Collector.' Said account was one in which said H. Walter Weaver deposited moneys collected by him as tax collector. He was a collector of county, township and school taxes in the Township of Darby, in said county ...... He has paid to each of said taxing units, ...... all collections which were deposited in said account and which constituted the balance therein at the time [the] bank closed. He opened said account of his own volition as a matter of personal convenience, and not because of any legal requirement; ...... Wherefore, the defendants claim they are now entitled to set off the aforesaid account of 'H. Walter Weaver, Collector,' for $913.56 against the aforesaid balance of $912.90 and in consequence there is nothing due on said judgment."

The respective rights of the parties became fixed as of the date of the insolvency of the bank: *Shipler et al. v. New Castle Paper Products Corp.*, 293 Pa. 412, 419, 143 A. 182; *Franklin Trust Co. of Philadelphia*, 319 Pa. 367, 370, 179 A. 592. At that date the entire balance of $913.56 in Weaver's "Collector's" account was, under the averments of his affidavit, composed of taxes, collected by him in his official capacity as tax collector for the various municipalities and deposited by him in this earmarked account. As we view it, the averment of the affidavit, that appellee "has paid to each of the taxing units ...... all collections which were deposited in said account and which constituted the balance therein at the time the bank closed," can mean only that at some period subsequent to the insolvency of the bank he has settled with the municipalities for the respective amounts due from him to each. Such settlements can in no way affect the disposition of the question which arose out of the prior closing of the bank. If he was

not entitled to set off the funds in his "collector's" account immediately before and at the date of the insolvency of the bank, he acquired no such right by the payments pleaded in his affidavit.

On the other hand, this averment amounts to a clear admission that the entire "balance" in the account when the bank closed consisted of tax "collections."

Manifestly, the pivotal issue in this case relates to the *ownership* at the time of the bank's insolvency of the balance in appellee's "collector" account.

As stated by Mr. Justice (now Chief Justice) KEP-HART in *Gordon v. Union Trust Co.,* 308 Pa. 493, 496, 162 A. 293, and repeated in *Franklin Trust Co. of Philadelphia,* supra, "The question here then is one of ownership, not one of determining the status of a deposit between the bank and the depositor. The underlying equitable principle set forth in *Trestrail v. Johnson,* supra, [298 Pa. 388] controls. The names in which suit could be brought and defended furnish an indication, but are not the only criterion, of the right of set-off. To whom do the funds really belong? Mutuality of right in a set-off is not circumscribed by the 'right to bring an action,' but the broader question may be and generally is of importance. Whose money or claim is proposed to be used as a set-off? This is the true equitable principle which governs such questions."

As applied to the case at bar, the question is: Were the funds, attempted to be set off by appellee against his individual indebtedness to the bank, his own money, or were they moneys received by him as a result of the discharge of his official duties and held by him in a fiduciary capacity?

The court below held the money belonged to him individually and could therefore be set off against his individual indebtedness.

Our consideration of the case has led us to a different conclusion. There seems to have been no decision by an appellate court of the proposition here involved

as applied to a tax collector's account. We have, however, a number of declarations by our Supreme Court of applicable general principles and, in addition, several legislative enactments declaratory of the capacity in which tax collectors hold the proceeds of their collections.

*Hunter, Receiver, v. Henning,* 259 Pa. 347, 103 A. 61, involved a suit by the receiver of an insolvent bank against Henning on a note signed by him individually. The Supreme Court refused to allow the debtor Henning to set off two deposits made by him prior to the bank's insolvency, one as "Executor of Y" and the other as "Trustee of Z, a minor," on the ground that no mutuality existed in the quality of the right asserted. This case may be regarded as one where the funds attempted to be set off by the depositor against his individual indebtedness to the bank were clearly held by him in a fiduciary capacity.

The case of *Franklin Trust Co. of Philadelphia,* supra, [319 Pa. 367, 179 A. 592] does not supply a definite precedent upon our question because it was there expressly stipulated that the deposits in the "Agency Account" and "Insurance Account," which the Supreme Court held could not be set off, belonged to certain named principals for whom the depositor had been acting as agent.

Here, the ownership of the fund is the very point in issue. Apparently recognizing this to be the issue, appellee included in his affidavit an averment reading: "All moneys deposited in said account were deposited therein at his risk and were his moneys." These averments are merely conclusions of law. The question whether the funds comprising the balance in the account were so individually the property of appellee as to entitle him to set them off against his individual indebtedness cannot be summarily disposed of by his mere averment that they "were his money." If it could, this appeal would not be here.

As observed by the Supreme Court in *Trestrail, Admr. v. Johnson, Sheriff,* 298 Pa. 388, 393, 148 A. 493, "the circumstances surrounding the question for decision in each case are of the utmost importance." There it was held that a bank deposit standing in the name of "Allison, Sheriff" is presumptively public money and goes to the succeeding sheriff rather than to the deceased sheriff's personal representative. While the case deals with funds deposited by a sheriff, some of the principles announced are equally applicable here. Mr. Justice KEPHART there stated (page 395): "There are circumstances where the ownership of public funds may be deemed to be in the individual, but this is only for the purpose of protecting the funds and permitting them to remain within the control of the designated responsible officer of the cestui que trust, as in *Swartwout v. Bank,* 5 Denio (N. Y.) 555; and this case by no means holds that, because the fund may be regarded as that of an individual in one instance, it loses its character as trust funds, and when the ownership of the fund is in question, it should be so treated. This is so, even if, in a bank failure, the accounting officer is responsible for the loss. That is because the officer's obligation was not only to keep the fund safely, but to have it ready when the government called for it. . . . . . . Where the ownership of the fund is in contest, the designation 'sheriff' would presumptively entitle it to be known as a trust account. Such presumption may be rebutted: *Stair v. York National Bank,* supra, [55 Pa. 364]; *Gaffney's Est.,* 146 Pa. 49; but the burden is on one claiming otherwise . . . . . . In *Erie v. Lamberton,* 297 Pa. 406, . . . . . . it was held that the addition of the words 'clerk of courts' created a presumption that the funds were not personal deposits, but were trust funds. . . . . . . "

As we have seen, appellee's affidavit contains no averments of any facts tending to rebut the presumption arising from the addition of the word "Collector."

When we turn to a consideration of the legislative declarations upon the subject with which we are concerned, we think it becomes quite clear that the fund now attempted to be used as a set-off was not the individual property of the appellee but was held by him in a fiduciary capacity.

Sections 18 and 19 of the Act of April 11, 1799, 3 Sm. L. 393, 72 PS Secs. 5733-5734, authorized the seizure of the person, and sale of the property, of a delinquent tax collector upon his failure to pay over to the treasurer of the county all sums due on his duplicate. Because this act provided a specific statutory remedy, it was held, prior to the Act of June 3, 1885, P. L. 72, hereinafter considered, that an indictment would not lie against a tax collector for embezzlement of the tax moneys received by him: *Hellings v. Commonwealth*, 5 Rawle 63.

The Act of April 15, 1834, P. L. 509, Sec. 49, 72 PS §5701, provides that "Every collector shall, within three months after receiving the corrected duplicate, pay into the hands of the treasurer ...... the whole amount of the taxes charged and assessed in such duplicate, excepting such sums as the commissioners ...... may exonerate him from ......"

The next enactment upon the subject was the Act of June 3, 1885, P. L. 72, 18 PS §2573. The first section thereof provides in part: "If any person charged with the collection, ...... of any state, county, township, school, city, borough, or municipal taxes ...... shall convert or appropriate the moneys so collected, or any part thereof, *to his own use in any way whatever,* or shall use by way of investment in any kind of property or merchandise any portion of the money so collected by him from such tax or taxes, ...... every such act shall be deemed ...... an embezzlement ...... which is hereby declared a misdemeanor." (Italics supplied.)

As the present Chief Justice, while a member of this

court, stated in *Commonwealth v. Sitler,* 67 Pa. Superior Ct. 1, at page 7: "The purpose of the Act of 1885 was not only to punish for the failure to pay over on demand tax moneys, but it punishes the unlawful use of such money by the officers entrusted with their collection, while it is in their custody or control." In *Commonwealth v. McCullough,* 19 Pa. Superior Ct. 412, and *Commonwealth v. Hackney,* 117 Pa. Superior Ct. 519, 178 A. 417, convictions under the Act of 1885, supra, were sustained.

The first headnote in *Commonwealth v. Mahon,* 12 Pa. Superior Ct. 616, correctly states this court's ruling in that case as follows: "An agreement between an insolvent tax collector and his assignee that unpaid taxes legally assessed be appropriated to the payment of the individual debts of the collector and credited to the property owner is void as against public policy, and because specially prohibited by the Act of June 3, 1885, P. L. 72."

Can it be doubted that if appellee had been permitted prior to the closing of the bank to apply the balance in his "collector's" account to the payment of the judgment held against him individually by the bank, he would have been guilty of an embezzlement of that money?

It follows, in our opinion, that he cannot now be permitted to use the $913.56 here in question as a set-off against the judgment upon which the scire facias issued, and that his amended affidavit of defense was insufficient.

The order discharging the rule for judgment for want of a sufficient affidavit of defense is reversed, the rule is reinstated, and the record is remitted with instructions to the lower court to enter judgment against the defendant for such sum as to right and justice may belong, unless sufficient legal or equitable cause be shown to the said court why such judgment should not be entered.