644 A.2d 741

**ROYAL BANK OF PENNSYLVANIA, Appellant,**

**v.**

**Joseph B. SELIG and Tremayne Selig and Continental Bank, Appellees.**

**ROYAL BANK OF PENNSYLVANIA**

**v.**

**Joseph B. SELIG and Tremayne Selig and Continental Bank.**

**Appeal of CONTINENTAL BANK.**

Superior Court of Pennsylvania.

Argued Jan. 20, 1994.

Filed June 10, 1994.

Reargument Denied Aug. 3, 1994.

---

540

Stuart H. Savett, Ardmore, for Royal Bank.

James W. Hennessey, West Conshohocken, for Continental Bank.

Before WIEAND, HUDOCK and SAYLOR, JJ.

WIEAND, Judge:

Royal Bank of Pennsylvania, the appellant, holds a judgment against Joseph and Tremayne Selig in an amount exceeding six million ($6,000,000.00) dollars. The Seligs are also indebted to Continental Bank for approximately fourteen million, eight hundred thousand ($14,800,000.00) dollars. On or about August 10, 1990, Royal Bank caused a writ of attachment to be issued on its judgment, and this was served on Continental Bank as garnishee. The object of the writ was a custodial account being maintained by the trust department of Continental Bank in which the Seligs, pursuant to agreement, had placed stocks, bonds and securities having a value of ten million, four hundred twenty thousand ($10,420,000.00) dollars.

When the trial court subsequently dismissed Royal Bank's writ of attachment, the bank appealed.

The facts were stipulated. They reveal that the present custodial account was created on or about January 17, 1990.[1] Pursuant to the terms thereof, Continental Bank was to provide safekeeping for securities deposited by the Seligs. The bank was also to buy and sell securities as directed by the Seligs, collect the income therefrom and distribute the same as the owner and the custodian should agree from time to time. The owner, with the bank's approval, could withdraw any security deposited under the agreement, and either party could terminate the agreement upon written notice to the other. The agreement contained no provision that securities deposited in the account were intended to be collateral for monies advanced by the Bank to the Seligs. Following execution of the custodial agreement, however, the Seligs agreed that the income from the stocks, bonds and other investments forming the res thereof was to be paid to Continental Bank to reduce the Seligs' liability to said bank. These liabilities had arisen by direct loans to the Seligs and also as a result of surety agreements executed prior to 1990 in connection with loans made to corporate borrowers.

Pursuant to Pa.R.C.P. 3111(c), the writ of execution served upon Continental Bank contained language restraining it from delivering any property of the Seligs and from paying any debt to or for the Seligs. Despite this language, Continental Bank sold securities which were a part of the custodial account and applied the proceeds on account of the Seligs' indebtedness to it. Thereafter, the trial court granted a petition by Continental Bank to dismiss the writ of execution and refused to enforce the same. The court also dismissed a petition to hold Continental Bank in contempt for violating the restraining order contained in the writ of execution. Royal Bank appealed.

1. An earlier account had been created in December, 1986. After January 17, 1990, however, all assets became a part of and were held pursuant to the terms of the later agreement.

■ The first issue is whether Royal Bank's attachment was invalid because the sheriff failed to take physical possession of the stocks, bonds and other securities forming a part of the custodial account. This argument by appellee is based on 13 Pa.C.S. § 8317 (1979), which, at the commencement of the proceedings in this case,[2] provided as follows:

### § 8317. Attachment or levy upon security

(a) **Seizure required.**—No attachment or levy upon a security or any share or other interest evidenced thereby which is outstanding shall be valid until the security is actually seized by the officer making the attachment or levy but a security which has been surrendered to the issuer may be attached or levied upon at the source.

(b) **Remedies available.**—A creditor whose debtor is the owner of a security shall be entitled to such aid from courts of appropriate jurisdiction, by injunction or otherwise, in reaching such security or in satisfying the claim by means thereof as is allowed at law or in equity in regard to property which cannot readily be attached or levied upon by ordinary legal process.

In the instant case, the stocks, bonds and securities were not in the possession of the debtors but in the possession of Continental Bank, an intermediary. Therefore, Royal Bank proceeded by attachment under Pa.R.C.P. 3111. Subsections (b), (c) and (d) of this Rule are as follows:

(b) Service of the writ upon the garnishee shall attach all property of the defendant which may be attached under these rules which is in the possession of the garnishee. It shall also attach all property of the defendant which may be attached under these rules and which comes into the garnishee's possession thereafter until judgment against him even though no such property of the defendant was in his possession at the time of service.

2. The statute was amended on July 9, 1992, effective in one year. 13 Pa.C.S. § 8317 (Supp.1992).

**Note:**

For limitations on the power to attach tangible personal property see Rule 3108(a).

**(c)** Service of the writ upon the garnishee shall also subject him to the mandate and injunctive orders of the writ restraining him from paying any debt to or for the account of the defendant and from delivering any property of the defendant which may be attached under these rules to anyone except the sheriff or otherwise disposing thereof until further order of the court or discontinuance or termination of the attachment.

**(d)** Violation of the mandate and injunctive orders of the writ may be punished as a contempt.

Under these provisions, even if Royal Bank's execution had not been perfected because of Continental Bank's continued possession of the Seligs' stocks, bonds and securities, it is clear that Continental Bank could no longer deal with the Seligs' investments as it had prior to the attachment. Indeed, the terms of the writ served upon Continental Bank expressly enjoined the garnishee-intermediary "from paying any debt to or for the account of the defendant[s] and from delivering any property of the defendant[s] or otherwise disposing thereof." When the garnishee-intermediary nevertheless sold securities and applied the proceeds on account of debts owed by the Seligs to said bank, it acted at its peril.

■■■ The Supreme Court, speaking on the effect of a writ of execution, has said:

"The service of an attachment execution has the effect of an equitable assignment of the thing attached. It puts the garnishee in the relation to the attaching creditor which he had sustained to his former creditor. He may make the same defense to the attachment by evidence of set-off or of other equities that he might have made if sued by his original creditor."

*Aarons v. Public Serv. Bldg. & Loan Ass'n,* 318 Pa. 113, 117, 178 A. 141, 142 (1935), quoting *Roig v. Tim,* 103 Pa. 115, 117 (1883). A creditor's right to attach a general bank account of

its debtor is subject to the garnishee-bank's right to set-off any matured obligation owed to it by its depositor. *Aarons v. Public Serv. Bldg. & Loan Ass'n, supra.* See also: *Gluth Bros. Const., Inc. v. Union Nat'l Bank,* 166 Ill.App.3d 18, 116 Ill.Dec. 365, 369, 518 N.E.2d 1345, 1349 (1988); *United States v. First Nat'l Bank & Trust Co.,* 695 F.Supp. 194, 196 (W.D.Pa.1988); *General Elec. Credit Corp. v. Tarr,* 457 F.Supp. 935, 937 (W.D.Pa.1978); *Allied Sheet Metal Fabricators v. Peoples Nat'l Bank of Washington,* 10 Wash.App. 530, 518 P.2d 734, 739 (1974). It is generally established that "a bank has a general lien upon or right of set off against all moneys or funds in its possession belonging to a depositor to secure the payment of the depositor's indebtedness to it ..." 5A Michie on Banks and Banking § 114. The Uniform Commercial Code does not modify or suspend this aspect of the common law. *Pittsburgh Nat'l Bank v. United States,* 657 F.2d 36, 39 (3rd Cir.1981). Immediately upon the maturity of a debt owed by a depositor, the bank's right to set-off, by operation of law, extinguishes the depositor's rights to the account. *Pittsburgh Nat'l Bank v. United States, supra* at 38. Set-off is not overridden by the filing or service of attachment execution or garnishment. *General Elec. Credit Corp. v. Tarr, supra* at 937. In effect, the garnishee-bank's common law right to set-off gives it a right to self-help that takes priority over other creditors claiming a right to the funds on deposit. *Walter v. Nat'l City Bank of Cleveland,* 42 Ohio St.2d 524, 330 N.E.2d 425, 427–428 (1975).

Set-off, however, is appropriate only where certain conditions are met. There must be mutuality of obligation between the bank and the depositor; the funds against which set-off is exercised must belong to the depositor; the funds must be deposited with the bank into a general account; and, the debt owed by the depositor to the bank must be mature. See: *Firstar Eagan Bank v. Marquette Bank Minneapolis,* 466 N.W.2d 8, 12 (Minn.App.1991); *Federal Dep. Ins. Corp. v. Pioneer State Bank,* 155 N.J.Super. 381, 382 A.2d 958, 962 (1977). The dispute in this case is whether the custodial account was a general account. Did Continental Bank have a

right to set-off the Seligs' debt against stocks, bonds and securities in possession of the bank's trust department pursuant to a written agreement which, by its terms, established no right of set-off in the custodian?

Generally, funds which have been deposited into a "special" account cannot be set-off against a debt owed from the depositor to a garnishee-bank. See: *R.M. Bourne & Co. v. Peoples Union Bank & Trust Co.,* 404 Pa. 519, 526, 172 A.2d 814, 818 (1961); *In Re Gordon,* 319 Pa. 367, 371, 179 A. 592, 593 (1935). See also: *Cotton States Mut. Ins. Co. v. Citizens & Southern Nat'l Bank,* 168 Ga.App. 83, 308 S.E.2d 199, 203 (1983). "A bank cannot knowingly accept a deposit for a particular purpose and then act to defeat the purpose for which that deposit was made." *American Sec. Bank v. Kaneshiro,* 67 Haw. 354, 688 P.2d 254, 255 (1984). A garnishee-bank, therefore, cannot exercise its right to set-off where it holds money or property belonging to a third party, *In Re Gordon, supra* 319 Pa. at 371, 179 A. at 593, or where the depositor has informed the bank that the contents of an account have been designated to fulfill a specific purpose. *American Sec. Bank v. Kaneshiro, supra; Capital Servs., Inc. v. Dahlinger Pontiac–Cadillac, Inc.,* 10 Kan.App.2d 328, 699 P.2d 549, 551 (1985). Additionally, where the bank maintains an account in which its right to detain the contents is subject to control, *Hudson United Bank v. House of Supreme, Inc.,* 149 N.J.Super. 153, 373 A.2d 438, 440 (1977), or where an account is controlled by an agreement through which the parties have demonstrated that a right to set-off had not been intended, 5A Michie on Banks and Banking § 118a, the account is considered "special" and no right to set-off exists. Where a "special" account exists, the bank is generally acting as a bailee or trustee. *Coyle v. Pan Amer. Bank of Miami,* 377 So.2d 213, 216 (Fl.App.1979). When an account has some characteristics consistent with a "special" as well as a "general" account, it is most important to consider the parties' intent. If the parties have indicated that the right to set-off is preserved, the account is not considered "special." *Hudson*

*United Bank v. House of Supreme, Inc., supra* 149 N.J.Super. 153, 373 A.2d at 441–442.

The custodial account in this case was, in effect, a trust account. Pursuant to agreement, Continental Bank was to provide safekeeping for stocks, bonds and securities deposited by the Seligs, buy and sell securities as directed by the Seligs, collect the income therefrom and distribute it as agreed by the parties, and deliver to the Seligs any or all securities upon request by the Seligs. This was not a general account; it was an account established for a special purpose. This intent of the parties becomes apparent from a reading of their agreement. The absence of any right, express or implied, to use the principal of the account to satisfy separate liabilities by the Seligs to Continental Bank confirms this intent.

Continental Bank also contends that it has a security interest in the stocks, bonds and securities forming the res of the custodial account. As evidence of personal loans made by Continental to the Seligs, the Seligs executed non-discount notes. These notes contained a provision as follows:

Borrower agrees that the Bank *shall have a lien upon and a security interest in the Collateral* to secure the payment of this Note and of all other obligations due or to become due or that may be hereafter contracted or acquired of Borrower (including Borrower and any other person) to Bank, whether direct or contingent, and whether incurred before or after making, transfer or negotiation of this Note to the holder hereof, and whether such holder be the payee or transferee, solely or jointly and severally with others, and whether or not such obligations or liabilities of Borrower to Bank are primary, secondary, direct, contingent, sole, joint or several and all costs and expenses including but not limited to reasonable attorneys fees however incurred by Bank in connection with any of such obligations or liabilities ("Liabilities").

Collateral was defined as follows:

The term "Collateral" as used herein, shall include all securities, tangible and intangible property, accounts, claims

and evidences or representations thereof (including all cash, stock and other dividends and other rights to subscribe for securities incident to, declared or granted in connection with such property), which Collateral has been or is hereby delivered, pledged, assigned and transferred to Bank and which is more fully described in a certain schedule in Bank's possession.

"Collateral" shall also include all tangible or intangible property of any kind, including not only such property, title and ownership of which is in Borrower, but also such property as to which Borrower has any power of pledge, hypothecation or other disposition, which Bank may now or hereafter have in its possession or control, or which is in transit to it, in any capacity whatsoever. Without limiting the generality of the foregoing, such property shall include deposit accounts, savings accounts, securities, bonds, life insurance policies, evidences of indebtedness, accounts receivable, mortgages, titles to motor vehicles, real estate, merchandise and all other property of any nature, similar or dissimilar, and all proceeds and increments thereof.

The surety agreements, pursuant to which the Seligs became guarantors of loans to various corporate borrowers, contained a term which provided that Continental Bank should

have a continuing lien upon all monies, deposits, stocks, bonds and all other personal property, tangible or intangible, similar or dissimilar thereto, any time coming into possession of the Bank belonging to the Undersigned, as security for the obligations of [the] Undersigned hereunder.

■■■ Appellant contends that the security interests created by these agreements were never perfected because financing statements were never filed in any public office. Continental Bank argues, on the other hand, that its security interests were perfected by possession of the securities.

■■■■ Generally, a financing statement must be filed in order to perfect a security interest. 13 Pa.C.S. § 9301(a). An exception to this rule provides that perfection can occur when the secured party takes possession of certain collateral. 13

Pa.C.S. § 9301(a)(1); 13 Pa.C.S. § 9305. "A security interest in letters of credit and advices of credit (section 5116(b)(1)), goods, *instruments,* money, negotiable documents or chattel paper may be perfected by the secured party taking possession of the collateral." 13 Pa.C.S. § 9305 (emphasis added). Because "instruments" includes investment securities, see: 13 Pa.C.S. § 9105 and 13 Pa.C.S. § 8102, a perfected security interest in stocks and bonds may be achieved by possession of the collateral.

The possession necessary for perfection of a security interest is akin to that required for a pledge. *Funding Sys. Asset Management Corp. v. Chemical Business Credit Corp.,* 111 B.R. 500, 516 (W.D.Pa.1990). See also: *Kendrick v. Headwaters Prod. Credit Corp.,* 362 Pa.Super. 1, 523 A.2d 395 (1987). For a pledge to exist, "[t]he pledgor must relinquish possession of the property and unequivocally deliver it to the pledgee in such a way that the pledgee has absolute dominion and control over the property so as to absolutely deprive the pledgor of any control over it." *Funding Sys. Asset Management Corp. v. Chemical Business Credit Corp., supra* at 517. See also: *In Re Dolly Madison Indus., Inc.,* 351 F.Supp. 1038, 1042 (E.D.Pa.1972), *aff'd,* 480 F.2d 917, *and,* 480 F.2d 918 (1973).

Here, it cannot seriously be denied that Continental Bank had possession of the stocks, bonds and securities which the Seligs delivered to it pursuant to the custodial agreement. Its possession of the securities was sufficient to put third parties on notice that Continental Bank had an interest in these assets, and inquiry of Continental Bank would have disclosed the nature of that interest. Its possession was not altered by provisions in the custodial agreement which permitted the Seligs to withdraw securities upon request or to terminate the agreement upon written notice. It must be concluded, therefore, that the security interest of Continental Bank, which had been created by the Seligs' notes and surety agreements, was perfected as to securities held in its possession at the time of the attachment.

▮▮▮ The validity of the security interest was not impaired by rights reserved to the Seligs in the written, custodial agreement. This is confirmed by the provisions of 13 Pa.C.S. § 9205, which are as follows:

### § 9205. Use or disposition of collateral without accounting permissible

A security interest is not invalid or fraudulent against creditors by reason of liberty in the debtor to use, commingle or dispose of all or part of the collateral (including returned or repossessed goods) or to collect or compromise accounts or chattel paper, or to accept the return of goods or make repossessions, or to use, commingle or dispose of proceeds, or by reason of the failure of the secured party to require the debtor to account for proceeds or replace collateral. This section does not relax the requirements of possession where perfection of a security interest depends upon possession of the collateral by the secured party or by a bailee.

Thus, even though the Seligs had the right to withdraw or replace securities and did in fact withdraw and replace securities from time to time, the validity of Continental Bank's security was not thereby impaired. Similarly, the validity of the lending bank's security interest was not impaired by the provision in the custodial agreement that such agreement could be terminated by either party to the agreement. Although the custodial agreement could be terminated by the Seligs, their right to reclaim possession of the stocks, bonds and other securities forming a part thereof was subject to the lien of Continental Bank which had been created by the loan agreements which they had signed in favor of the bank. An attaching creditor of the Seligs could acquire no greater rights to these securities than those enjoyed by the Seligs. See: *Tremont Township Sch. Dist. v. Western Anthracite Coal Co.,* 381 Pa. 276, 281, 113 A.2d 234, 237 (1955); *In Re Trainer's Estate,* 166 Pa.Super. 472, 475, 71 A.2d 833 (1950).

▮▮▮ Where a secured creditor has perfected its interest in property of the debtor, its rights to that property are superior to subsequent lien creditors. 13 Pa.C.S. § 9301(d). By taking

possession of the Seligs' investment securities, Continental Bank perfected a security interest in those securities and gained rights superior to Royal Bank, an attaching creditor. As a secured creditor, Continental could liquidate the collateral it held to satisfy the secured obligations of the Seligs. 13 Pa.C.S. § 9504.

Because Continental Bank had a perfected security interest in the stocks, bonds and other securities forming a part of the Seligs' custodial account and because Continental Bank's lien was superior to the rights of the attaching creditor, Royal Bank, we will affirm the order of the trial court which dismissed the attachment and refused to hold Continental Bank in contempt of court. Although Continental Bank may have acted in haste by disposing of securities after service of the writ of execution upon it, its superior rights to such securities rendered its conduct harmless. Because each court is the exclusive judge of contempts against its process, *East & West Coast Serv. Corp. v. Papahagis*, 344 Pa. 188, 190, 25 A.2d 341, 342 (1942), it cannot be said that it was an abuse of discretion for the trial court under the circumstances of this case to find that Continental Bank's conduct was not contemptuous.

Orders affirmed.