SMALLWOOD et al., *Appellants*, v. LAFAYETTE COUNTY.

1.  **County Courts.** The county courts have no power to issue certificates of county indebtedness. Such a certificate is, therefore, no evidence of debt.

2.  **Set-off:** DEBTS DUE IN CAPACITY OF TRUSTEE. A demand due to a county for money borrowed of the county school fund may be set-off against a demand due by the county for services rendered on behalf of the same fund, and which by contract are to be paid for out of it. The county stands in the position of trustee as respects both demands. See *Gansner v. Franks, ante,* p. 64.

*Appeal from Lafayette Circuit Court.*—HON. WM. T. WOOD, Judge.

AFFIRMED.

*Graves & Wood* for appellants.

The certificate of indebtedness was payable out of the general expense fund of the county. It was an acknowledgment of general indebtedness by the county to Hixon. The school fund notes and judgment thereon were not due the county from Hixon in its own right. They were due

the county simply as trustee.  *Ray Co. v. Bentley*, 49 Mo. 242.   In a suit against a defendant, a debt held by defendant as trustee, cannot be used as a set-off.  *McDonald v. Harrison*, 12 Mo. 447 ;  Waterman on Set-off, (2 Ed.) § 191.

*William Young* for respondent.

The so-called certificate of indebtedness, issued by the county clerk, was wrongly admitted.    It could prove nothing.   By law the county court only has power to audit claims against the county.   Wag. Stat., p. 441, § 9. Such power cannot be delegated, and any contract delegating such authority is so far void.   Plaintiffs took the claim of Hixon against defendant, subject to all of the equities and set-offs defendant had against Hixon.

HENRY, J.—The suit herein was for a balance due upon the contract which is set forth in the following certified copy of the record of Lafayette county court and upon the following certificate of indebtedness :

LAFAYETTE COUNTY COURT,
September Term, second day, Sept. 8, 1874. }

Now, at this day, come Hixon and Russell, and present to the court here a contract, in which they propose to prove certain swamp lands in this county and receive compensation for the same, and which said proposition was heretofore filed in the office of the clerk of this court on the 21st day of July, 1874, and which said contract is in words and figures following, to-wit :

This agreement, made and entered into this 24th day of June, 1874, by and between William Hixon and Charles B. Russell, parties of the first part, and the county of Lafayette, party of the second part, witnesseth :   That the said parties of the first part have been appointed by the county court of Lafayette county, commissioners to hunt up and obtain proof on all lands that were entered by individuals between the years 1850 and 1857, inclusive, being

the lands returned by the county surveyor as swamp or overflowed lands, and, whereas, Col. Babbitt, United States Swamp Land Commissioner, and Captain Bergau, Swamp Land Commissioner for the State of Missouri, have arrived and are ready to hear evidence on the character and swampy condition of the same in the year 1850 and since that date, said parties of the first part are to furnish such and all legal evidence and proof of said land to said Babbitt and Bergau, commissioners as aforesaid, that they may be able to do; and for all lands that they, the said parties of the first part, may prove up as swamp land in the year 1850, before said commissioners, and upon which the county, on account of proof so made, shall have established before said commissioners her right to have pay for the same from the general government, they are to have, and to be paid by said county of Lafayette at the rate and price of thirty cents per acre on all lands so proved up aforesaid, except those lands for which the government received twelve and a half cents, and our commission for the proving up of the " bit " land, shall only be six and a quarter cents for each and every acre so proved up. If the proper proof is adduced the county will acquire land warrants for 1,440 acres of land, and our commission will be one-half of all land warrants received by the county, said commissions, etc., not to be paid until the county shall have received the moneys, warrants, etc., from the general government, through the State Treasurer of the State of Missouri. It was thought by the register of lands of this State that he would be able to get from the government $1.25 per acre for all lands so proved up, that is, for all the " bit " land; in that event we are to receive thirty cents per acre on all lands proved up, except that for which land warrants may be issued; and when the testimony on all the swamp land in the county shall have been completed before said commissioners, then the clerk of this court, under his seal, is to give to the said parties of the first part a certificate of indebtedness to the amount of what may have been proved

up in accordance with this contract and to be paid as above stated, the amount of $613 to be deducted from the amount which may be due us, and to be deducted before we receive any of said funds ourselves.

(Signed)             WM. HIXCN.

CHAS. BEN. RUSSELL.

Plaintiffs allege that there was a settlement between Hixon and the county on the 8th day of September, 1874, by which it was ascertained that the county was indebted to him in the sum of $1,352.60, for which a certificate of indebtedness was issued to him by the county court on the 11th day of September, 1874, which was subsequently assigned by him to plaintiffs, and this suit is to recover of the county the amount named on the certificate.

It appears from the evidence that at the date of the assignment of the certificate to plaintiffs, Hixon was indebted to the county by notes given for school moneys borrowed by him, in an amount exceeding the amount of the certificate of indebtedness, and this was pleaded and allowed, as a set-off against plaintiffs' demand, and this is their ground of complaint.

By the contract, the indebtedness evidenced by the certificate was payable out of the funds which should be received by the county from the general government for swamp lands. There was no express agreement to that effect, but that such was the understanding of the parties is fairly inferable from the terms and the character of the contract. The labor Hixon was employed to perform was exclusively in reference to the swamp lands, the proceeds of the sales of which belong to the school fund, and it is expressly stipulated in the contract, that: " When the testimony on all the swamp land in the county shall have been completed before said commissioners, then the clerk of this county court, under his seal, is to give to said parties of the first part a certificate of indebtedness, to the amount of what may have been proved up in accordance

with this contract and to be paid as above stated, the amount of $613 to be deducted from the amount which may be due us, and to be deducted before we receive any of said funds ourselves." The order of the county court is in substance that the county of Lafayette is indebted to Hixon as per contract, etc., in the sum of $1,352.60, "to be paid to him, or his order, so soon as the indemnity swamp land fund shall have been received from the general government, which is now due." The clerk in vacation issued the certificate in question, but failed to state therein the fund out of which it should be paid.

We have failed to find any statutory provision which authorizes a county court to issue certificates of county indebtedness, and, therefore, this certificate is not even *prima facie* evidence of the indebtedness it certifies.

The law relied upon by appellants, is not applicable to this case. It is true that in a suit against one for debt, he cannot set-off a debt due to him as trustee. *McDonald v. Harrison*, 12 Mo. 447. But in this case, both the demand of the county against Hixon, and his against her, were in favor of, and against, the county as trustee of the school fund. All concurring, the judgment is affirmed.