### JOHNS v. UNITED BANK & TRUST CO. OF CALIFORNIA, and four other cases.

(Circuit Court of Appeals, Ninth Circuit. November 1, 1926. Rehearing Denied Nov. 15, 1926.)

Nos. 4881, 4882.

**I. Bankruptcy ⟐154—Notwithstanding trust for conduct of debtor's business was imposed on property of debtor by agreement between him and creditors, including bank, held, on bankruptcy of debtor, bank of which trustees borrowed, and with which they deposited new funds, had right of offset (Bankruptcy Act, § 68a [Comp. St. § 9652]).**

Though, by agreement of F. with creditors, including bank, trust was imposed on all his property and that of corporation organized by trustees for conducting his affairs, *held* that on his bankruptcy, bank could, under bankruptcy Act, § 68a (Comp. St. § 9652), set off, as against debts to it incurred by the trustees under power in trust agreement, deposits with it by the trustees of new funds, not the proceeds of the trust property.

**2. Bankruptcy ⟐140(3).**

Creditors who contributed special fund to pay percentage of claims of other creditors to enable debtor's business to be carried on by trustees *held*, on bankruptcy of debtor, to be entitled to pro rata payment of balance of such fund after payment of outstanding checks against it.

**3. Bankruptcy ⟐184(2)—Creditors contributing to enable debtor's business to be continued held, under their agreement with other creditors, though not recorded, to be entitled to priority for contribution on bankruptcy of debtor (Bankruptcy, §§ 47a, 67a [Comp. St. §§ 9631, 9651]).**

Creditors, contributing fund under agreement with debtor and the other creditors for conduct of debtor's business, giving them prior right to payment of contributions out of assets of estate, are entitled to such priority, on bankruptcy of debtor, though the agreement was not recorded, they not being in the attitude of lien-holders, enforcement of whose lien, under Bankruptcy Act, §§ 47a, 67a, depends on recordation, but their claims being such not only against the estate, but claims against the other creditors, created by their own act and constituting a charge on their demands against the estate.

Appeals from the District Court of the United States for the Northern Division of the Southern District of California; Paul McCormick, Judge.

Two actions by William E. White (for whom A. G. Johns was substituted), as trustee in bankruptcy, of E. Y. Foley, Inc., and of E. Y. Foley, one against the United Bank & Trust Company of California, the other against the Pacific-Southwest Trust & Savings Bank and others. Plaintiff was decreed partial relief (9 F.[2d] 650), and appeals, as does also the named defendant in each case and J. E. Lynes, who individually and as trustee for A. Arens & Co., and others, intervened in the second action. Affirmed in part, and in part reversed and remanded.

See, also, In re Foley, 1 F.(2d) 568; Id., 4 F.(2d) 152, 154.

In November, 1922, E. Y. Foley, who was extensively engaged in the business of buying, transporting, and selling fruit, having his principal office at Fresno, Cal., was indebted in about the sum of $2,000,000 to three groups of creditors, fruit growers in California, produce and commission merchants and brokers in the Eastern States, and California banks and materialmen, his largest single creditor being the Pacific-Southwest Trust & Savings Bank of Fresno, hereinafter called the Pacific Bank. In view of the demands of creditors for immediate payment and threats of attachment, Foley went East and informed his Eastern creditors of his financial condition, and unsuccessfully endeavored to obtain a loan from them. Two of the Eastern creditors, however, Nellis and Andrews, acting as a committee to represent other Eastern creditors, returned with him to Fresno with a view to effecting a plan whereby pressing claims might be satisfied and the business resumed and all debts paid. The committee met with a representative of the fruit growers and with Southerland, vice president of the Pacific Bank, and Puckhaber of the United Bank & Trust Company of California, hereinafter called the Trust Company.

The result of the conference was an agreement whereby Foley was to transfer to trustees all his property for the benefit of his creditors, the trustees to hold, manage, and conduct his business until the debts were paid, Foley to remain in the business as agent of the trustees, and to devote his time and attention to carrying out the scheme. It was in the plan that certain creditors, including the banks, were to advance not to exceed $300,000 as a fund for the trustees, to be used in liquidating pressing claims and in continuing the business for the benefit of all creditors,

the contributors to the fund to be primarily protected against loss and to have a first lien against all of the property and assets so assigned, payable out of the first moneys realized from the proceeds thereof. Sixty days were allowed for procuring the assent of interested parties to the agreement. It was further agreed that if the trustees deemed it advisable they might conduct the business through a corporation to be formed for that purpose. The written agreement was executed of date January 26, 1923, by Foley and three trustees, representing, respectively, the banks, the growers, and the Eastern creditors, and it was signed by more than 90 per cent. in amount and number of the creditors. Later the number of trustees was increased to five.

On February 19, 1923, an agreement concerning the contributions of the Western creditors to carry out the trust was entered into. It provided that the notes were to be made by the trustees for the advances, but that the trustees were not to be personally liable therefor, and that the contributors were to be secured by a first and prior lien against all the property, and were to be reimbursed out of the first money realized from the proceeds thereof. On March 14, 1923, a similar agreement was entered into with the Eastern creditors, who made Lynes their representative. The trustees went into active control of the business for the purpose of taking over all of the assets of E. Y Foley, the trustees under the original contract remaining in control of the business. On March 12, 1923, at the regular meeting of the trustees they declared the trust to be in effective operation and adopted a formal set of rules. Foley made deeds and assignments of all his property to the Pacific Bank as custodian for the trustees. At the meeting of March 12th the trustees called for the payment of promised subscriptions from the Eastern and Western creditors in the amount of $200,000, and the money realized thereupon was deposited in the Pacific Bank under the direction of the trustees in a special trustee's account.

Difficulty had arisen through the refusal of two trustees to sign the notes to the contributors of the $200,000 fund, and the money had been returned to the agents of the contributors, to be held until a corporation might be formed. The corporation so organized in June, 1923, immediately took the place of the trusteeship; five of the directors being the old trustees. The contributors' fund was returned to the trustees. The corporation was but a continuance of the trust created by the prior agreements. It was not successful in carrying out the scheme. There was opposition of certain creditors, and opposition of the Corporation Commission of California; the result being that from July to September, 1923, more than $400,000 indebtedness was created, so that on September 13, 1923, a petition in involuntary bankruptcy was filed, and E. Y. Foley and E. Y. Foley, Inc., were adjudged bankrupt.

The foregoing are in substance the findings of the court below on the issues presented in the actions brought by the trustee in bankruptcy of the estates of E. Y. Foley and E. Y. Foley, Inc., against the Pacific Bank and the Trust Company, respectively, to contest their right to retain funds in their hands as offsets against their claims in bankruptcy; the former claiming as offset $127,433.76, and the latter claiming $41,171.03, and incidentally bringing into the former action the claim of one Lynes as trustee of certain contributing creditors, and the right of one Pruner and one Tarpey to certain payments out of said funds. Each bank answered, denying that the money so held by it was not subject to set-off, for the reason that it was a trust fund or impressed with a trust, and alleging that the money came into its possession in the ordinary and usual course of business, creating between the bank and the trustees, and later the corporation, the relation of debtor and creditor, and entitling the bank to the right of set-off. The trial court found that the banks did business with the trustees of E. Y. Foley and E. Y. Foley, Inc., from and after January 26, 1923, not in the ordinary and usual course of business, but under trust agreements for the benefit of the creditors, to which the banks were parties, and with moneys which were impressed with a trust for the benefit of all creditors, and that therefore they had no right to offset funds in their hands against indebtedness incurred by the trustees in carrying out the trust agreement.

Everts, Ewing, Wild & Everts and D. S. Ewing, all of Fresno, Cal., and Cushing & Cushing, Charles S. Cushing, O. K. Cushing, and Delger Trowbridge, all of San Francisco, Cal., for United Bank & Trust Co. of Cal.

Theodore M. Stuart, of Fresno, Cal., for A. G. Johns, as trustee.

Milton M. Dearing and Robert M. Thomas, both of Fresno, Cal., and Farrand & Slosson, Geo. E. Farrand, and Leonard B. Slosson, all of Los Angeles, Cal., for Pacific-Southwest Trust & Savings Bank.

Ward Chapman, of Los Angeles, Cal., for J. E. Lynes.

Thelen & Marrin, of San Francisco, Cal.,

and Harris & Hayhurst, of Fresno, Cal., for Tarpey, as executor.

Harris & Hayhurst, of Fresno, Cal., for Pruner.

Before GILBERT and RUDKIN, Circuit Judges, and NETERER, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). [1] Assuming the fact to be, as found by the trial court, that a trust was imposed upon all of the property of E. Y. Foley or E. Y. Foley, Inc., as the result of the agreements of January, February, and March, 1923, that there was no cancellation of the original agreements under which moneys were contributed to the trust, that the circular letters sent out on May 15, May 23, and May 29, 1923, by members of the committee of trustees to creditors, notifying them that the trustees did not feel justified in proceeding with the agreements and had definitely abandoned them, did not have the effect to abrogate the trust, and that the trust subsisted until the adjudication of bankruptcy, we are unable to assent to the conclusion that the two banks here involved should be denied the right to set-off, as against the debts incurred by the trustees, funds which came into their possession from the trustees in the administration of the trust.

By the original agreement the trustees were to manage, direct, operate, and control Foley's business for the benefit of all creditors. They were given power to mortgage or sell the property, to borrow money "and give evidence of indebtedness therefor on any terms or conditions," and to carry on the business as fully and to the same extent as Foley could carry it on. From and after the creation of the trust the moneys deposited with the two banks by the trustees and the debts due the banks from the trustees were new moneys and not the proceeds of any of the trust property and the dealings between the parties constituted mutual debts and credits within the meaning of section 68a of the Bankruptcy Act (Comp. St. § 9652). It is true that the right of a bank to retain the balance of a debtor for the general balance of account may be waived or controlled by any agreement which shows a contrary intention. Furber v. Dane, 203 Mass. 108, 89 N. E. 227. But here there is nothing to show such a waiver of the right. The banks were under no obligation to advance moneys for the benefit of the creditors and they never by any act of theirs relinquished the right of set-off.

We cannot assent to the proposition that, inasmuch as the trust agreement, in empowering the trustees to borrow money, made no express provision for the repayment of the same, the banks could have no right of set-off. Nor can we agree that in dealing with the trustees these banks occupied a position different from that which would have been occupied by a bank a stranger to the trust. The power to borrow money given to the trustees necessarily implied the power to repay the same. Neither by the terms of the trust agreements nor in the law applicable to the facts was any restriction placed on the power of the trustees to open an account with a bank in the ordinary course of business and subject to the usual incidents of such banking accounts for the purpose of carrying on the business for which the trust was created. The beneficiaries of the trust cannot be permitted to claim title to all the bank deposits made by their trustees and at the same time disclaim all liability for the debts which their trustees incurred. Smallwood v. Lafayette County, 75 Mo. 450; Durkee v. National Bank, 102 F. 845, 42 C. C. A. 674; Continental Trust Co. v. Chicago Title Co., 229 U. S. 435, 33 S. Ct. 829, 57 L. Ed. 1268.

[2, 3] Among the funds in the Pacific Bank as to which that bank claimed the right of set-off were $57,988.41, constituting the Special A account. That sum remained of the moneys contributed by creditors to make payment of 25 per cent. on the claims of grower creditors, and to meet other claims necessary to be paid to clear the way for carrying out the trust agreements. The trial court properly, we think, disposed of this fund by ordering that it be paid pro rata to those who contributed it, subject to the deduction therefrom of $7,000 to be paid to Pruner and $1,334.99 to be paid to Tarpey on checks which they held against said fund drawn by the trustees to pay creditors who had agreed to accept 25 per cent. on their claims, in consideration of which they were to forbear the balance of their claims and accept therefor notes or preferred stock in the corporation.

Lynes, representing the contributing creditors intervening in the suit brought by the trustee against the Pacific Bank, brought into the case, in addition to the question of his right to the Special A fund, the question of the right of the contributing creditors to receive out of the estate payment of their claims on account of their contributions in preference to the claims of other creditors. Notwithstanding the manner in which the question was thus interjected, the trustee in bankruptcy, in order to avoid multiplicity of suits joined issue thereon and the matter was submitted to the determination of the trial court. The decision was against the claim of prior-

ity, and it was based upon the consideration that the trust agreements had not been filed for record, so as to create a lien enforceable under sections 67a and 47a of the Bankruptcy Act (Comp. St. §§ 9651, 9631). But we think there can be no question but that the money thus contributed by the creditors and creating a trust fund for designated purposes gave by the terms of the agreements a prior right to the contributors to payment out of the assets of the estate as against the banks and other creditors.

The contributors are not in the attitude of lien holders, the enforcement of whose lien depends upon recordation. Their claims are not only claims against the estate in bankruptcy, but are claims against the other creditors of the estate, created by their own act and assented to by all parties in interest, and constitute a charge upon their demands against the estate. 4 Remington, Bkcy. (3d Ed.) § 1421; Walker v. Brown, 165 U. S. 654, 17 S. Ct. 453, 41 L. Ed. 865.

As to the disposition made by the trial court of the moneys in the Special A account, the judgment is affirmed. As to the other issues, the judgment is reversed, and the cause is remanded for further proceedings in accordance with the foregoing views.