**In the Matter of A. M. TOWNSON & CO.,**
**Bankrupt.**
**No. 12997.**

United States Court of Appeals
Third Circuit.

Argued Jan. 18, 1960.

Reargued June 20, 1960.

Decided Oct. 5, 1960.

**450**

Jerome L. Markovitz, Philadelphia, Pa. (S. Robert Levant, Markovitz, Stern & Shusterman, Philadelphia, Pa., on the brief), for appellant.

J. Horace Churchman, Philadelphia, Pa. (Jack B. Justice, Drinker, Biddle & Reath, Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH, McLAUGHLIN, KALODNER, STALEY, HASTIE, and FORMAN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

On March 20, 1957, the Bankrupt filed a Chapter XI petition and Messrs. Klein and East were appointed receivers to carry on the business pending confirmation of the arrangement. On March 28, 1957, they opened a general account with appellee. They opened a second account called "A. M. Townson & Co., Inc. Tax Account, Morton Q. Klein and William East, Receivers", on the same day. On May 13, 1957 they opened a third account "Morton Q. Klein and William East, Receivers, Special Machinery Account." The funds in the latter account were derived from the sale by the Receivers of machinery and equipment which had been distrained by the Bankrupt's landlord; whatever amount of valid liens as existed against the machinery and equipment was confined to those funds. In June and early July 1957, the bankrupt business, operated by the Receivers was losing money. The District Court issued an order to pay twenty-five per cent of employees' vacation money. The Receivers did not have sufficient funds for this purpose. Mr. Schneider, described by Mr. Klein, as "the guiding spirit of the bankrupt concern" according to Mr. Klein's testimony "advanced some $17,000 for the purpose of paying the vacation money and the salaries that were due at that time." This was in the form of checks which were deposited by Mr. Klein in appellee bank and "two or three days later" drawn on by the Receiver for the needed vacation and pay money and paid by the bank. All of the checks given by Mr. Schneider were returned in due course for insufficient funds. On July 8, 1957, the bank transferred the sum of $17,281.38 from the "Special Machinery Account" to the general account to cover the payments of said checks.

Later, liquidation of the Bankrupt was ordered. The Trustee in Bankruptcy applied to the Referee for an order requiring the bank to replace the $17,281.38. After a hearing the application was denied. Neither the Trustee or landlord sought review of the decision. The present appellant, representing the Bankrupt's employees, did so. The District Court affirmed the Referee. This appeal followed.[1]

Factually the issue here is one of credibility between the Receiver Klein and the bank. Klein said that he opened all of the receivership accounts with a Mr. Smedley, an officer of the bank. As to

---

1. The District Court quite properly allowed appellant permission to appeal.

See In re Michael J. Hughes & Co., 3 Cir., 1953, 207 F.2d 295.

the machinery account, Klein stated that he " * * * told him it was a special machinery account; it will be an inactive account; it will not be used for the simple reason that the Court will not permit us to use that money on account of the distraint for rent at the Adams and Leiper property. * * * I think he (Smedley) said, 'Why can't you use it?' or something like that. I said, 'Because we have a Court Order. We can't use the money. It is a Special Machinery Account, untouchable.'"

Actually, Smedley was not even in the bank's bookkeeping department which latter had the final responsibility for paying checks. Klein, a lawyer and the District Court's specially appointed representative in the receivership involved, does not pretend that he gave the bank any kind of written notice concerning the Special Machinery Account or that he ever said anything to the bookkeeping department concerning it. Smedley, plainly not one to overstate, did not recall that he was ever notified by Klein or anyone else that the account could not be used to take care of overdrafts from the Receiver's general account. He said that the bank often relied on an account marked "special" where it was in the same name and there might be a shortage in the general account. And that in the entire present situation he relied on the Special Machinery Account to take care of overdrafts in the general account. Cottingham, head of the bank's bookkeeping department, testified that if there was a restriction on an account it had to come to him "We have to know about it. If we pay a check unauthorized, it is our responsibility." He said he had no information that would indicate that the machinery account could not be used to cover overdrafts " * * * *there was not a thing on this account to indicate that we could not pay a check signed by Mr. Klein.*" (Emphasis supplied.)

The objection to Smedley's evidence is that he did not categorically deny Klein's story in much the same fashion that Klein proffered it. To the Referee ap-

parently Smedley's testimony, coupled with the over all picture, had the ring of truth. Clearly nothing had occurred in the whole episode which gave Smedley any recollection of Klein, a lawyer and the court appointed receiver, having taken the fantastic course of merely speaking to him (not in the proper department at all) in order to protect one of his accounts *against his own withdrawals* which eventually totalled over seventeen thousand dollars. Appellant urges that Klein's story should be accepted at its face value because all other evidence regarding the transaction is "non-negating." We think that the Receiver's story of how he alleges he went about protecting his machinery deposit, under the circumstances, was its own strongest negating force in producing its rejection by the Referee and the District Court.

In the face of the above the Referee had every right to discount the Receiver's testimony. But it is suggested Klein's evidence must be accepted because the Referee disbelieved it for the wrong reason. And the statement is made that it would have been to the Receiver's advantage not to have testified he had advised the bank of the restrictions on his machinery account. It is of course true that if the bank was not charged with Klein's overdrafts, as it was not, it would have no claim against him. It is also true, and most important regarding the Receiver's credibility, that he, by not notifying the bank of the nature of the account, would be responsible for any deficiency arising out of his negligence and subject to surcharge.

The Referee rightly held this conflict in the testimony to be a "basic factual dispute." He said:

"Having examined the witnesses and seen them on the witness stand, and observed their demeanor, the Referee is of the opinion that the restriction on this Special Machinery Account was not brought to the Bank's attention, that the Bank was without knowledge of the fact that third persons had an interest

in the funds of the depositor, the Bank relied upon the apparent right to offset overdrafts in the general account through the deposit made in the Special Machinery Account."

The Referee found as facts that the bank "had no knowledge that the Receivers could not use the account designated 'Special Machinery Account' for general purposes" and that the bank "had no knowledge that any person other than the Receivers had an interest in or lien against said account." He concluded that the bank "was legally entitled to set off an amount in the receivers' account designated 'Special Machinery Account' against said indebtedness."

The District Court, sustaining the Referee's findings of fact and conclusions of law, dismissed the petition for review.

We have no right to interfere with the findings of fact as affirmed by the District Court. The testimony above quoted shows the conflict between the Receiver and the bank and the abundant justification for the resolving of that conflict in favor of the bank and for the finding of no notice to the bank to restrict the Receiver's machinery account.

What remains is that the particular account carried the designation of "Special Machinery Account." Was this sufficient to so restrict its balance as to prevent it from being used to cover the overdraft in the general account of the same depositor? We think this is a matter of federal law, with an interested eye toward the Pennsylvania decisions. While there are no federal reported cases exactly in point, those found unmistakably hold that where a bank has neither actual notice nor notice of facts sufficient to put it on inquiry regarding the true character of the deposit it may apply the deposit to the overdrafts in the depositor's general account. In re Greater Pythian Temple Ass'n of New York, D. C.S.D.N.Y.1937, 19 F.Supp. 762, 764 concerned a debtor's "special account" prior to his bankruptcy but Judge Patterson's statement of the legal situation is most helpful. He said:

"The proof taken before the referee shows that the bank's adverse claim was substantial. The fact that the account was a 'special account' did not of itself signify that the money in it was the property of some one other than the depositor. The words on the back of the check, 'for security on lease,' would have sufficed to put the bank on notice that another party had an interest in the money; but there is an issue of fact whether those words appeared on the check at the time when it was deposited. It is one man's recollection against another's. Finally, the testimony on what was said when the account was opened is in conflict. On this record 'the weight of evidence' is probably with the debtor, as the referee reported; but it is quite another thing to say that the proof offered in the bank's behalf is not substantial enough to raise an issue of fact.

"On the facts developed there is no jurisdiction to issue a summary order for the payment of the money. The debtor's petition will accordingly be dismissed. The expenses of the hearings before the referee will be borne by the debtor."

And see Commercial Nat. Bank of Independence, Kan. v. Stockyards Loan Co., 8 Cir., 1926, 16 F.2d 911, 916; In re Goll, et al., D.C.S.D.N.Y.1925, 8 F.2d 101. Attempt is made to distinguish these opinions from the situation before us on the ground that in this instance there is a receivership. But in this receivership the proofs and proper inferences therefrom furnish at least adequate support for the findings of the Referee, confirmed by the District Court, that the bank had no notice from the Receiver that a check signed by him as receiver should not be honored against his receivership machinery account where his general receivership deposit was over-

drawn.[2] Pennsylvania law is much the same. Perhaps the leading case is Franklin Savings & Trust Co. of Pittsburgh v. Clark, 1925, 283 Pa. 212, 129 A. 56, which presents a situation much like the one before us. There the account was in the name of "John W. Garland, Special". The Supreme Court held that unless the deposit in that account was specifically appropriated by the depositor (maker of the note in suit) to a particular purpose, the bank was bound to apply it to the discharge of the note. The Court held at pages 218 and 219 of 283 Pa., at page 58 of 129 A.:

"Our conclusion is not altered by the fact that the account to which the checks were placed was in the name of 'John W. Garland, Special.' The account, to have the effect contended for by appellant, must come within what is generally understood by the words 'special' account, as distinguished from a general one. A 'special' deposit or account is one where the identical money or thing deposited is to be kept safe and returned as deposited. The relation of debtor and creditor is not created, but that of bailor and bailee is, title remaining in the bailor. Whether a deposit is general or special depends on the facts and circumstances attending its making; but it is certain that the mere use of the word 'special,' placed after the depositor's name, will not cause the deposit to come within the definition above

mentioned, nor will it effect an appropriation of the moneys for any particular purpose, so that it may be said they were set aside for a limited purpose with the bank's knowledge.

"Money may be deposited specially which has no relation whatever to bailment, trust fund, or specific appropriation. It is a common practice to place money in banks in separate accounts to quickly, safely, and accurately report to the government income for the past year. Special accounts are created for income, while capital remains in the individual account. The word 'special' has no particular significance, as trustee, administrator, and the like."

In Sherts v. Fulton National Bank, 1941, 342 Pa. 337, 21 A.2d 18, the Pennsylvania Supreme Court held that an account marked "Farm Account" was not sufficient to put the bank on notice that the fund belonged to third parties. We note the "Farm Account" in that case was specifically so designated and not simply "Special" as suggested and that it does bear a close similarity to the marking of the account before us.

It is argued that Ryan Brothers, Inc. v. Curwensville State Bank, 1955, 382 Pa. 248, 114 A.2d 178 is to the contrary. That is a misstatement. Indeed the court there reiterated the general rule above stated which was not applied because the bank had actual notice that the account was not a regular checking ac-

**2.** Trestrail v. Johnson, 1929, 298 Pa. 388, 148 A. 493, and Franklin Trust Co. of Philadelphia, 1935, 319 Pa. 367, 179 A. 592, are presented at this time for the proposition that appellee bank could not, as it did, set off the machinery account. Both are sharply inapposite. In Trestrail the bank did not set off the depositor's funds, but was only a passive interpleader in an action to determine the conflicting rights of two parties to funds deposited in an account labeled "Thomas W. Allison, Sheriff". In Franklin Trust Co. of Philadelphia, supra at page 370, of 319 Pa., at page 592 of 179 A., the bank's right of set off was denied for the reason that:

"The bank's claim was against the company (depositor) in the latter's own right for its individual debt; what the bank claimed the right to set-off was a demand (deposit) in the name of its creditor as agent in which that creditor had no property right, the property right being in third persons."
The pending inquiry is substantially different, since our issue is not one of asserted claims of ownership to the "Special Machinery Account", but whether that designation was sufficient to so restrict its balance as to prevent it from being used to cover the overdraft in the general account.

count. There the bank alone drew on the account in question.

There is no substance to appellant's general charge that if the bank's position is upheld an unlawful and inequitable preference is allowed it over other creditors.[3] The true status of the money in the Special Machinery Account, as contended for by appellee, would seem to be that it is really part of the general funds of the Bankrupt's estate. It has been admitted by appellant that the balance remaining in that estate is not enough for the expenses of the receivership. If the amount disputed in this litigation should be added to the estate it will be set off by the bank's claim in that same figure. The landlord's lien does not enter into this calculation as it is postponed to the administration ex-

penses. Though much justification exists for the position outlined, because the District Court order based on the Referee's findings and conclusions so strongly calls for affirmance there is no need of our going that far. We do think, however, as determinedly urged by the bank, that the proposition put forth by appellant for the employees, would probably result, if not in an out and out preference, in something of a windfall to the employees. They were paid their salaries to date and twenty-five per cent of vacation allowances by the overdrafts instead of being forced to share proportionally with the other creditors in the receivership assets which latter were insufficient to pay in full the claims against the estate. In addition, under appellant's theory they would share in the Special Machinery Account

3. For the first time in this cause it is argued that Section 68 of the Bankruptcy Act, 11 U.S.C.A. § 108, precludes the utilization of set off by a bank against a receiver's or trustee's account. It is urged that support for the argument that Section 68 of the Bankruptcy Act precludes the use of set off by appellee bank is found in 3 Remington on Bankruptcy, (1957 ed.), Section 1477, page 483, which reads: " * * * it seems, moreover, that not even indebtedness of such an officer [bankruptcy trustee or receiver] to the bank in his official capacity can be used as a setoff, since the funds are in custody of the court." The uncited following sentence in the same paragraph of Remington reads:
"An exception may exist, however, where the trustee [or receiver] has been authorized to continue the bankrupt's business and the bank has made advances to enable him to do so." (Emphasis supplied.)
The citation used as authority for the quotation from Remington allegedly bearing out the denial of set off here, reveals that under proper circumstances, set off is proper. In that decision, Hover v. Genesee Valley Trust Co., 2 Cir., 1941, 123 F.2d 813, the trustee in bankruptcy entered into a contract with a bank to sell wine belonging to the bankrupt's estate but pledged to the bank. The contract provided that the pledgee-bank should bear the expenses of liquidating the pledge, but that sales expenses of any free wine of the estate sold by the

bank at the same time as the pledged wine, should be borne by the estate. The sale was not successful and the bank sought to set off all the expenses of the sale against the trustee's checking account. The court held that the contract controlled and although the bank could not set off the sales expenses of any pledged wine, they could set off the sales expenses of any free wine.
Set off under facts analogous to those before us is sound federal doctrine. In Lebanon Iron Co. v. Donnelly & Co., D.C. E.D.Pa.1928, 29 F.2d 411, the court, in allowing a bank to set off against court-appointed receivers' accounts a payment on money borrowed by the receivers under a receivers' certificate, stated at page 412:
"The receivers had an ordinary deposit account with the bank. It was indebted to them for deposits, and they were indebted to it for money borrowed upon the certificates issued to enable them to carry on the business. The proceeds of the business were deposited in that account. The accounts being mutual, and the deposits not being subject to a trust, the bank was clearly within its rights in setting off the depositors' debt against their deposit account."
To the same effect in Durkee v. National Bank, 5 Cir., 1900, 102 F. 845, where the court allowed the bank to set off against a receiver's account certain notes issued to the bank by the receiver. There the receiver was appointed ancilliary to a railroad foreclosure proceeding.

money, if the bank were forced to replace the sum to the Receivers.

The order of the District Court will be affirmed.

KALODNER, Circuit Judge (dissenting).

I would reverse the Order of the District Court.

I would do so for these reasons:

First, the deposit "set-off doctrine" is not applicable to bank accounts of receivers in bankruptcy since they are in *custodia legis*.

Second, assuming arguendo, that the doctrine is applicable to bankruptcy receivers' accounts, there was error in its application in the instant case for these reasons:

(a) The designation "Special Machinery Account" was sufficient to put the bank on inquiry that the funds in it were at the minimum the subject of a claim of ownership by someone other than the bankruptcy receiver since at the time the account was opened there were already in existence a Receivers "General Account" and a Receivers "Tax Account";

(b) Assuming further, that the designation "Special Machinery Account" was not of such a nature as to put the bank on inquiry, under the general "equitable rule" prevailing in deposit set-off situations, even though a bank is without knowledge, or notice of facts putting it on inquiry, that another than the depositor has an interest in the funds deposited in his name, where such an interest exists the bank cannot appropriate them.

Third, the record establishes as "clearly erroneous" the Referee's fact-findings, affirmed by the District Court, that the bank "had no knowledge that the Receivers could not use the account designated 'Special Machinery Account' for general purposes", and that "Girard had no knowledge that any person other than the Receivers had an interest in or lien against said account".

As to the first point:

From the time of the filing of the bankruptcy petition, the assets of the bankruptcy estate are in *custodia legis* and the bankruptcy court has exclusive jurisdiction and it alone has the *sole* right to determine the validity of any and all claims against the bankruptcy estate. In re Ripp, 7 Cir., 1957, 242 F.2d 849.

Money of a bankrupt estate collected or received by the receiver is in *custodia legis*. Section 61 of the Bankruptcy Act (11 U.S.C.A. § 101) expressly provides in part:

"The judges of the several courts of bankruptcy shall designate, by order, banking institutions as depositories for the money of estates under this Act * * *."

Section 47 of the Act (11 U.S.C.A. § 75) provides in part:

"Trustees shall * * * (2) deposit all money received by them in designated depositories; * * * (4) disburse money only by check or draft on such depositories * * *."[1]

General Order No. 29 (11 U.S.C.A. following section 53), prescribed by the Supreme Court pursuant to the provisions of the Bankruptcy Act, provides in part as follows:

"No moneys deposited as required by the Act shall be drawn from the depository unless by check or draft, signed by the clerk of the court or by a receiver or trustee, and countersigned by the judge, or by a referee, or by the clerk or his assistant under an order made by the judge, stating the date, the sum, and the account for which it is drawn."

As was stated in American Surety Co. of New York v. First Nat. Bank in West Union, W. Va., 4 Cir., 1944, 141 F.2d 411, 413, certiorari denied 322 U.S. 754:

---

[1]. The provisions cited are applicable to Receivers. 3 Collier on Bankruptcy, para. 61.02, p. 1349 (14th ed. 1950).

"It is perfectly clear that the purpose of these provisions was to protect the funds of bankrupt estates, not merely to designate banks in which trustees might deposit funds without incurring personal liability * * *."

It is settled that the right of set-off in bankruptcy is governed by the provisions of Section 68 of the Bankruptcy Act. McCollum v. Hamilton Nat. Bank, 1938, 303 U.S. 245, 248, 58 S.Ct. 568, 82 L.Ed. 819.

Section 68 provides as follows:

"a. In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.

"b. A set-off or counterclaim shall not be allowed in favor of any debtor of the bankrupt which (1) is not provable against the estate and allowable under subdivision g of section 57 of this Act; or (2) was purchased by or transferred to him after the filing of the petition or within four months before such filing, with a view to such use and with knowledge or notice that such bankrupt was insolvent or had committed an act of bankruptcy." 52 Stat. 878.

The provisions stated make it clear that the right of set-off which they permit relate only to "mutual debts or credits" existing *prior* to the filing of the bankruptcy petition and not those arising thereafter. Inherent in the majority's disposition is the assumption that a right of set-off may arise after bankruptcy has occurred. I can see no basis for such an assumption. It was held in Desser, Rau & Hoffman v. Goggin, 9 Cir., 1957, 240 F.2d 84, 86, certiorari denied 355 U.S. 813, 78 S.Ct. 12, 2 L.Ed.2d 30, that "* * * where no right of setoff or any other right against

the fund existed before bankruptcy that one cannot now establish the setoff." Again, in Avant v. United States, D.C. E.D.Va.1958, 165 F.Supp. 802, at page 805, it was said:

"The principles governing the applicability of setoff in bankruptcy proceedings is stated in McDaniel Nat. Bank v. Bridwell, 8 Cir., 74 F. 2d 331. It was there held that mutuality of debts and credits between the *bankrupt* and the party claiming the *right of setoff must exist when the petition in bankruptcy was filed; the latter date being the time when the right of setoff is measured* * * *." (Emphasis supplied.)

As succinctly stated in 4 Collier on Bankruptcy, para. 68.10, page 743 (14th ed. 1942):

"Generally speaking, the rights of parties under § 68 are adjusted as of the date of bankruptcy * * *."

Counsel for the bank has cited two cases[2] in support of its contention that the "right of a bank to make a set off against an overdrawn bank account has been upheld in bankruptcy proceedings." The cases cited are completely inapposite to the instant situation; in both, the banks involved had *prior* to bankruptcy applied the bankrupt's deposit in set-off of a then existing indebtedness of the bankrupt. Here the bank set-off against overdrafts by the Receivers in their "General Account" funds in the Receiver's "Special Machinery Account."

In summary on this phase of the case, I am of the opinion that (1) the "set-off doctrine" is inapplicable to bank accounts of receivers or trustees in bankruptcy since such accounts, as property of the bankrupt estate, are in *custodia legis;* (2) the statutory scheme of the Bankruptcy Act does not sanction a set-off with respect to a debt arising to bankruptcy, and (3) the Act does not permit a set-off claim arising out of a bank's

2. American Bank of Alaska v. Johnson, 9 Cir., 1917, 245 F. 312 and Tomlinson v. Bank of Lexington, 4 Cir., 1906, 145 F. 824.

dealings with a bankruptcy trustee or receiver.[3]

Coming now to the point presented by the majority's determination that the designation "Special Machinery Account" was not of such character as to put the bank on notice of its restricted nature so as to make its balance unavailable for set-off against the overdrafts in the Receivers' "General Account".

I agree, of course, with the majority that the issue is one to be governed by federal law. "The bankruptcy act prescribes its own criteria for distribution to creditors. In the interpretation and application of federal statutes, federal not local law applies." Prudence Realization Corporation v. Geist, 1942, 316 U.S. 89, 95, 62 S.Ct. 978, 982, 86 L.Ed. 1293.

The majority has cited three federal cases as authority for the proposition that "where a bank has neither actual notice nor notice of facts sufficient to put it on inquiry regarding the true character of the deposit it may apply the deposit to the overdrafts in the depositor's general account." These cases are not apposite nor analogous in any respect to

the instant case. None of them involved bankruptcy receivers' accounts. Taking them in the order cited by the majority: in In re Greater Pythian Temple Ass'n of New York, D.C.N.Y.1937, 19 F.Supp. 762, 764 the asserted "special account" was opened by the *debtor* in reorganization *prior* to the filing of the reorganization petition; in Commercial National Bank of Independence, Kan. v. Stockyards Loan Co., 8 Cir., 1926, 16 F.2d 911, 916, certiorari denied 275 U.S. 547, 48 S. Ct. 84, 72 L.Ed. 418, there was no bankruptcy at all, and in In re Goll, D.C.N.Y. 1925, 8 F.2d 101, the asserted "special account" of the bankrupt depositor was invaded by the bank *prior to bankruptcy.*

"With an interested eye towards the Pennsylvania decisions," the majority has cited two cases in support of its holding that the designation "Special Machinery Account" did not put the bank in the instant case on notice of its restricted nature.

It must be submitted that the cases cited, on analysis, afford little sustenance to the majority's view.

3. It may be noted that in 3 Remington on Bankruptcy, (1957 ed.) Section 1477, page 483, it is said:

"* * * it seems, moreover, that not even indebtedness of such an officer [bankruptcy trustee or receiver] to the bank in his official capacity can be used as a setoff, since the funds are in custody of the court."

As the majority has pointed out (footnote 3) Remington has added the further statement that "An exception may exist, however, where the trustee * * * has been authorized to continue the bankrupt's business and the bank has made advances to enable him to do so." and in a footnote cites Johns v. United Bank & Trust Co., 9 Cir., 1926, 15 F.2d 300, certiorari denied 273 U.S. 753, 47 S.Ct. 457, 71 L.Ed. 874. A reading of that case discloses that it did not involve advances by a bank to a bankruptcy trustee to enable him to continue operation of the bankrupt's business. The bank loans were made in the Johns case to trustees operating under an assignment for the benefit of creditors and not to a bankruptcy trustee, and the right to set-off was asserted by the lending banks against

the bank accounts of the assignment trustees and not against the bank account of the bankruptcy trustee.

The majority has also cited (footnote 3) Lebanon Iron Co. v. Donnelly & Co., D.C.E.D.Pa.1928, 29 F.2d 411, where a bank was permitted to set-off bankruptcy receivers' deposits against loans made on authorized receivers' certificates. With respect to that case it must be pointed out that the District Court's opinion does not disclose that consideration was given to the set-off provision of Section 68 of the Bankruptcy Act.

The majority's citation of Durkee v. National Bank, 5 Cir., 1900, 102 F. 845, as being to the same effect as the Lebanon Iron Co. case is inapposite. The Durkee case did not involve the application of the Bankruptcy Act. The receivership there was in equity and not in bankruptcy.

It may be stated parenthetically that in the Lebanon Iron Works case the District Court relied on Durkee v. National Bank, supra and Johns v. United Bank & Trust Co., supra, despite the fact that these two cases were inapposite to the issue there presented.

In the first of these cases, Franklin Savings & Trust Co. of Pittsburgh v. Clark, 1925, 283 Pa. 212, 129 A. 56, it was ruled that funds in an account designated "John W. Garland, Special" were subject to set-off by the bank against Garland's matured note, the Court holding (283 Pa. at page 219, 129 A. at page 58) that the designation "Special" was "insufficient [of itself] to put the bank on inquiry", since "the word 'special' has no particular significance, *as trustee, administrator and the like.*" (Emphasis supplied.)

The second of the Pennsylvania cases cited by the majority, Sherts v. Fulton National Bank of Lancaster, 1941, 342 Pa. 337, 21 A.2d 18, 19, held that the bank could not resort to an account "H. Edgar Sherts, Attorney" because the term "Attorney" was sufficient to put the bank on notice as to its restricted nature, but that the designation of a second account, "H. Edgar Sherts, Farm Account", was not of a character sufficient to afford "notice" to the bank that the funds deposited in it "belonged to someone other than the depositor".

Anent its holding that the term "Attorney" was sufficient to put the bank on notice the Court said (342 Pa. at page 339, 21 A. at page 19):

"All the authorities agree that if a bank has knowledge, or notice of facts enough to put it upon inquiry, that the funds in a depositor's account actually belong to a third person, it may not apply such funds to a debt owed to it by the depositor individually. * * *. The word 'attorney' * * * clearly raises a presumption, when used in connection with a bank account, that the funds therein belong to some undisclosed principal, clients, or beneficiaries."

And at page 340 of 342 Pa., at page 20 of 21 A.:

" * * * It is sufficient that the bank have knowledge that a fiduciary relation exists; it is not necessary that it know the identity of the beneficiaries."

I do not agree with the majority's view that the designation "Farm Account" bears "a close similarity to the marking of the account before us" [Special Machinery Account] having in mind that preceding the latter description was the phrasing "Morton Q. Klein and William East, Receivers".

It may be noted parenthetically, that the bank in this case was denied recourse to the "Farm Account" on the finding below that the funds in it belonged to Sherts' clients.

In an earlier Pennsylvania case, Franklin Trust Co. of Philadelphia, 1935, 319 Pa. 367, 179 A. 592, the Pennsylvania Supreme Court held to be inviolate accounts captioned "Insurance Account" and "Agency Account". In Trestrail v. Johnson, 1929, 298 Pa. 388, 396, 148 A. 493, not cited by the majority, it was held that accounts designated "Thomas W. Allison, Sheriff" could not be invaded. These two cases were decided after Franklin Savings & Trust Co. v. Clark, supra, cited by the majority.

In Ryan Brothers, Inc. v. Curwensville State Bank, 1955, 382 Pa. 248, 114 A.2d 178, the Sherts and Franklin Trust Co. cases were cited with approval, and their doctrines reaffirmed.

With respect to them, the Court said (382 Pa. at page 254, 114 A.2d at page 181):

"In * * * Franklin Trust Co. of Philadelphia * * * it was held that a bank may not set off against a debt due it by a depositor, individually, deposits in accounts in the name of the depositor with special designations added where the funds represented by such deposits are in fact the property of third persons. It was there directly held that this is so even though the bank has no knowledge, beyond the special designations of the accounts, of any facts indicating the nature of the depositor's business or the nature of the funds contained in the accounts. In the Sherts case, supra, it was specifically remarked that in the Franklin

Trust Co. case we had ranged our-selves definitely with those jurisdictions which have adopted the so-called 'equitable rule' there followed. See, also, Witherow v. Weaver, 337 Pa. 488, 491, 12 A.2d 92."

The foregoing makes it clear that the majority's reliance, and that of the Referee and the District Court, on Franklin Savings & Trust Co. v. Clark, and Sherts v. Fulton National Bank of Lancaster, supra, was not justified.

It supports the view expressed at the outset of this dissent that even though the designation "Special Machinery Account" was not sufficient to put the bank on inquiry, and even though it was without knowledge that someone other than the Receivers had an interest in the account, that such other interest, if it existed, precluded the bank from appropriating the funds in the "Special Machinery Account."

In the instant case the account in question consisted of funds realized from the sale by the Receivers of machinery and equipment which had been distrained by the bankrupt's landlord and the account was to be kept intact until the bankruptcy court determined the validity of the landlord's lien. Under the general "equitable rule" if the landlord were entitled to the funds in the account in question the bank could not resort to it. Here the bank was permitted, in disregard of the "equitable rule" to resort to the account before judicial determination of the issue of its ownership by the landlord.

The "equitable rule" which prevails in Pennsylvania has been subscribed to by federal courts time and again. Prudence Realization Corporation v. Geist, supra; Pepper v. Litton, 1939, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281; Cumberland Glass Mfg. Co. v. DeWitt, 1915, 237 U.S. 447, 455, 456, 35 S.Ct. 636, 59 L.Ed. 1042; In re Potts, 6 Cir., 1944, 142 F.2d 883, 887, certiorari denied 324 U.S. 868, 65 S.Ct. 910, 89 L.Ed. 1423; Inter-State National Bank of Kansas City v. Luther, 10 Cir., 1955, 221 F.2d 382, 389, certiorari granted 350 U.S. 810, 76 S.Ct. 77,

100 L.Ed. 726, certiorari dismissed by stipulation, 350 U.S. 944, 76 S.Ct. 297, 100 L.Ed. 823; First National Bank of Portland v. Dudley, 9 Cir., 1956, 231 F.2d 396, 401, 402.

There is still another aspect to this situation which deserves noting in applying equitable principles.

In the instant case, where the bank resorted to the balance in the "Special Machinery Account", even the most cursory scrutiny discloses this situation:

The bank knew it was dealing with Receivers in bankruptcy with respect to their General Account which was designated "Receivers Account". It must be held to have knowledge that Receivers under the Bankruptcy Act may not borrow money without prior authorization by the bankruptcy court. Here the bank, by knowingly permitting repeated and increasing overdrafts by the Receivers, was in substance lending the Receivers money without prior authorization by the bankruptcy court. With respect to these overdrafts the record establishes that the Receivers' General Account which was opened March 28, 1957 had an overdraft of $1,795.09 on May 29, 1957; overdrafts in June, 1957 ranging from $1,960.27 on June 11 to $11,862.72 on June 28; and the culminating overdraft of $17,281.38 on July 8, 1957 which was "satsified" by the appropriation by the bank on that date of $17,281.38 of the funds in the "Special Machinery Account".

That the bank was at all times aware of the overdrafts is evident from this testimony by Smedley (assistant treasurer):

"I had been watching the overdrafts in the general account."

The sum total of the foregoing is that the bank knowingly made loans, via the overdrafts, to the Receivers in the absence of authorization for such loans by the bankruptcy court, and in the application of the "equitable rule" prevailing in deposit set-off situations, should not be permitted to resort to the "Special Machinery Account", which, irrespective of

the issue of notice by reason of its designation, or lack of specific notice to the bank of the nature of that Account, was created pursuant to Court order relegating "to the fund realized from the sale" the machinery liens asserted by the bankrupt's landlord.

Finally, as to the point that the record establishes as "clearly erroneous" the Referee's fact-findings, (affirmed by the District Court) that the bank "had no knowledge that the Receivers could not use the account designated 'Special Machinery Account' for general purposes", and that "Girard [bank] had no knowledge that any person other than the Receivers had an interest in or lien against said account":

At the hearing before the Referee, Morton Q. Klein, one of the Receivers of the bankrupt estate, testified that at the time of the opening of the "Special Machinery Account" he advised William J. Smedley, assistant treasurer of the Girard Trust Corn Exchange Bank, in charge of "customer relations", of the restricted nature of the account under the bankruptcy court's restrictive order.

Klein's testimony was explicit on that score as appears from the following excerpt from the Notes of Testimony taken during the hearing before the Referee on April 30, 1958: [4]

"* * * I opened all my accounts with Mr. Smedley. I told him it was a special machinery account; it will be an inactive account; it will not be used for the simple reason that the Court will not permit us to use that money on account of the distraint for rent at the Adams and Leiper property * * *."

In response to this question: "Did Mr. Smedley make any comment at the time that the account was being opened?" Klein testified:

"I mentioned the fact that it was opened as a Special Machinery Account because I am not permitted to use the money. * * *

"I think he [Smedley] said, 'Why can't you use it?' or something like that. I said, 'Because we have a Court order. We can't use the money. It is a Special Machinery Account, untouchable.'"

Smedley, on direct examination, testified that he had known Klein for "probably twenty years" as a customer of the bank and that he had opened accounts for him during that period. He also testified that he handled the opening of the bankruptcy estate's general account on March 28, 1957 and the "Special Machinery Account" on May 13, 1957, and that he was "fully familiar with the operation of those two accounts."

On the score of Klein's testimony that he had advised him of the restricted nature of the "Special Machinery Account" at the time of its opening, Smedley did not deny or challenge it but merely said that he didn't "remember" or "recall" notice of the restriction.

On direct examination by the bank's counsel, Smedley was asked this question:

"Now at the time this account was opened, Mr. Smedley, did Mr. Klein refer to any decree that had been entered by the Court in which the Court restricted the use of these funds so that they could not be used until further order of the Court?"

Smedley's reply to this question was:

"I don't remember."

Again, when asked by the bank's counsel:

"Do you recall whether you were ever notified by Mr. Klein or by anybody else that this account could not be used to take care of overdrafts from the general account?"

Smedley's answer was:

"I don't recall."

It is apparent from the foregoing that Smedley's testimony was non-negating as far as Klein's testimony was concerned and afforded no basis whatsoever for the Referee's curious conclusion that

4. Notes of Testimony, pages 8 and 9.

it raised "a basic factual dispute" on the issue as to whether Klein had advised Smedley of the restricted nature of the "Special Machinery Account". The Referee resolved the asserted "basic factual dispute" by making the fact-finding "that the restriction on this Special Machinery Account was not brought to the Bank's attention", and "that the Bank was without knowledge of the fact that third persons had an interest in the fund of the depositor."

Throwing light on the "reasons" which motivated his rejection of Klein's testimony is this illuminating statement in the Referee's "Opinion and Order Sur Petition."

Said the Referee:

" * * * The question could rightly be asked—is Mr. Klein trying to protect himself, would he be responsible to the Bank in the question of a surcharge upon his bond, is he attempting to protect his own position from a review of the entire evidence in this case?"

With respect to the question posed by the Referee it can only be said that if Klein sought to protect himself from responsibility to the bank for his overdrafts on his General Account it would have been to his advantage *not* to have testified that he had advised Smedley of the restricted nature of the "Special Machinery Account" because there would not then have been raised any question as to the bank's right to invade it, and the bank having recouped the overdraft in the General Account would have had no claim to assert against Klein, assuming arguendo that the overdraft would in any event have given rise to a claim against Klein. The Referee's inference in his posed question that the bank could have sought a surcharge against Klein "upon his bond" for the overdrafts is to say the least, baffling, since his bond did not run to the bank but to the benefit of the bankruptcy estate.

What has been said makes it clear that the Referee's stated fact-findings were "clearly erroneous" and their adoption by the District Court is in the same category. That being so, this Court should reverse the District Court's "Order".

There remains this to be said.

The District Court by permitting the bank to set-off the $17,281.38 overdraft in the Receivers' General Account against the "Special Machinery Account" deposit was according to the bank a *lien* status which it would not have had under the Bankruptcy Act had it in fact been duly authorized by the Bankruptcy Court to make a $17,281.38 loan to the Receivers. Under Section 64, sub. a(1) of the Bankruptcy Act court-authorized loans made to receivers to finance their operations are in the category of "the actual and necessary costs and expenses of preserving the estate" and are accorded first priority as an "expense of administration".[5] Here the bank, despite the fact that its overdrafts—over an extended period and in large amounts—were not authorized by the Bankruptcy Court, emerges, by reason of the District Court's action, in the status of a lien holder rather than a first priority claimant. This despite the fact that borrowings by a receiver or trustee not authorized by the Bankruptcy Court are not a charge upon the bankruptcy estate. Amick v. Hotz, 8 Cir., 1939, 101 F.2d 311, certiorari denied 307 U.S. 637, 59 S.Ct. 1033, 83 L.Ed. 1518; Standard Capital Corporation v. Saper, 2 Cir., 1940, 115 F.2d 383.

For the reasons stated I would reverse the Order of the District Court.

Chief Judge BIGGS concurs in this opinion.

Judge HASTIE is persuaded by and joins in this dissent on all of the grounds stated above, except that he does not believe that the findings of the Referee are clearly erroneous.

5. In re Delaware Hosiery Mills, 3 Cir., 1953, 202 F.2d 951, 952, 953; In re Columbia Ribbon Co., 3 Cir., 1941, 117 F. 2d 999, 1002.